## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

| | |
|---|---|
| J.B. and L.P., by and through their next friend, Mary Troupe; L.M., by and through his next friend, Trasie Howard; and L.S., by and through his next friend, Sheila Davis, <br><br> Plaintiffs, <br><br> v. <br><br> GOVERNOR HALEY BARBOUR, in his official capacity; ROBERT L. ROBINSON, in his official capacity as Director of the Mississippi Division of Medicaid; PATRICIA AINSWORTH, in her official capacity as chair of the Mississippi Board of Mental Health; and EDWIN C. LEGRAND, in his official capacity as Executive Director of the Mississippi Department of Mental Health, <br><br> Defendants. | Case No. 3:10cv153 HTW-LRA |

SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

MAR 1 0 2010

J. T. NOBLIN, CLERK
BY_____ DEPUTY

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### INTRODUCTORY STATEMENT

1.      Thousands of children and youth in Mississippi have a behavioral or emotional disorder. Tragically, all too many of these children spend their formative years isolated from their families and communities as they cycle through institutions that cannot provide them adequate care. Children in Mississippi with behavioral and emotional problems face a rigid, facility-based mental health system that both ignores and exacerbates their needs. In order to access intensive mental health services in Mississippi, children must either deteriorate to the point of crisis required for involuntary hospitalization, or submit to unnecessary institutionalization. Both scenarios force children to relinquish their families, communities, and freedom, and endure

1

isolation, multiple placements, and severed connections, making even more challenging the task of helping these children overcome their difficulties. The failure to provide children with intensive mental health services in a home or community-based setting denies children medically necessary services and results in needless institutionalization, in violation of federal law. Mississippi's taxpayers are thus forced to shoulder the burden of an expensive and ineffective mental health system that greatly diminishes the quality of life and human potential of thousands of children across the State. Providing children with medically necessary home- and community-based services, rather than relying exclusively on hospitals and institutions, would save the State and its taxpayers a significant amount of money and improve the life chances of thousands of children in Mississippi.

2.      The Defendants are well-aware that the mental health system fails to provide medically necessary home- and community-based mental health services, and subjects children to harmful and unnecessary institutionalization. A 2008 report from a committee of the State Legislature describes the dramatic shift from an institution-based system to a community-based system of mental health care in the United States, and warns that "[a]s of 2005, Mississippi still ha[s] yet to follow the national trend set over fifteen years ago of devoting the majority of its mental illness expenditures to community-based services." Joint Legislative Committee on Performance Evaluation and Expenditure Review (PEER), *Report to the Mississippi Legislature, Planning for the Delivery of Mental Health Services in Mississippi: A Policy Analysis* 29 (Jun 26, 2008), available at: http://www.peer.state.ms.us/reports/rpt511.pdf. Contrary to this national trend, Mississippi continued to build new institutions into the 1990s, well after most other states turned their resources to community-based services, and Mississippi ranks second nationally in per-capita spending for institution-based mental health care. *Id.* at 28. The report warns that the

U.S. Supreme Court's 1999 holding in *Olmstead v. L.C., ex rel. Zimring,* 527 U.S. 581 (1999) will require the State to move toward providing more community-based services in the near future. *Id.* at 33.

3.     As a result of Defendants' continued over reliance on institutions, hundreds of children with behavioral and emotional disorders cycle through hospitals, emergency rooms, acute care facilities, and residential treatment centers without obtaining any long-term relief.   These placements may offer a brief period of respite, but the benefits are fleeting at best.  Mississippi's system of mental health care is so weak and uncoordinated that most children are released from facilities with little or ineffective follow-up community mental health care.  It can take months to get an appointment from a community mental health center, and when services finally arrive, they consist of little more than minimal medication management and outpatient counseling two times a month, which is inadequate for a child with significant behavioral and emotional problems.  Not surprisingly, many children and families find themselves thrown back into a crisis, forced to repeat the cycle of institutionalization yet again.  Under the current system, Defendants opt to raise children living with behavioral and emotional problems in hospitals and institutions, rather than providing the intensive, individualized care that allows children to remain in their homes and communities.

4.     J.B., L.P., L.M., and L.S. and the class they represent are Medicaid-eligible children who have behavioral or emotional disorders, but who are not being provided with the treatment required by federal law.   As Medicaid-eligible children under the age of twenty-one, Plaintiffs are entitled to receive Early and Periodic Screening, Diagnostic, and Treatment Services (EPSDT Services) which include services necessary to correct or ameliorate mental health conditions.  42 U.S.C. § 1396a(a)(43)(C); 42 U.S.C. § 1396d(a)(4)(B); 42 U.S.C. § 1396d(r)(5); 42 C.F.R. §

441.55. Despite widespread agreement among mental health experts that children with significant emotional or behavioral problems need intensive home- and community-based services, none of the named Plaintiffs have ever received such services; and all have been, or currently are, segregated in a restrictive institutional setting due to the lack of medically necessary services. Each Plaintiff has been and is being harmed because s/he is not receiving medically necessary mental health services and is needlessly institutionalized or at risk of needless institutionalization. The continued denial of medically necessary services, as well Defendants' reliance on unnecessary institutionalization, has caused and will continue to cause serious, long term and irreversible harm to the Plaintiffs.

5. The Plaintiffs seek prospective injunctive relief ordering the Defendants to comply with federal law mandates to provide Plaintiffs medically necessary mental health services and to serve Plaintiffs in home and community settings. The violations set forth in this Complaint have been acknowledged by the state legislature, mental health professionals, and the Defendants themselves, but little has been done to address the problem. Declaratory and injunctive relief is necessary to ensure that the Plaintiffs receive the treatment and services to which they are entitled by law.

## PARTIES

**Individual Plaintiffs**

6. Plaintiff J.B. is a seventeen year old boy who has experienced over ten placements in psychiatric hospitals and long-term residential treatment facilities and is currently committed to the Specialized Treatment Facility in Gulfport, MS. J.B. is from North Central Mississippi, and he brings this action through his next friend, Mary Troupe.

7.     L.P. is a seventeen year old girl who has experienced a number of psychiatric hospitalizations. L.P. is from the Jackson metropolitan area and is currently committed to the Specialized Treatment Facility in Gulfport, MS. She brings this action through her next friend, Mary Troupe.

8.     L.M. is a sixteen year old boy who has experienced six psychiatric hospitalizations and one long-term placement in a psychiatric treatment facility. L.M. resides in the Mississippi Delta. He brings this action through his mother and next friend, Trasie Howard.

9.     L.S. is a thirteen year old boy who has been placed in long-term psychiatric residential treatment facilities on three separate occasions. He is from Southwest Mississippi and currently resides at the CARES Center in Jackson, Mississippi. He brings this action through his legal guardian and next friend, Sheila Davis.

10.     All Plaintiffs need but are currently being denied intensive home- and community-based mental health services. All are currently institutionalized or at imminent risk of being institutionalized as a result of being denied the intensive home- and community-based mental health services they need.

**Defendants**

11.     Defendant Haley Barbour is the Governor of Mississippi, a public entity covered by Title II of the ADA, 42 U.S.C. § 12131(1) and a participant in the federal Medicaid program. Defendant Barbour, as supreme executive officer of the state, is responsible for ensuring that all Mississippi agencies comply with applicable federal law. Miss. Code Ann. § 7-1-5 (a)(c). Defendant Barbour is responsible for supervising the official conduct of all executive offices— including the Department of Mental Health, the State Board of Mental Health, and the Division of Medicaid. Miss. Code Ann. § 7-1-5 (d). Defendant Barbour appoints the members of the

State Board of Mental Health, Miss. Code Ann. § 41-4-3(1); appoints the Executive Director of the Division of Medicaid, which is a division of the Governor's Office, Miss. Code Ann. § 43-13-107, and approves all Medicaid expenditures. Miss. Code Ann. § 43-13-117(A). Defendant Barbour is sued in his official capacity.

12.     Defendant Robert L. Robinson is the Executive Director of the Mississippi Division of Medicaid, the single state agency responsible for the administration of the Mississippi Medicaid program. Defendant Robinson oversees the development and execution of Mississippi's Medicaid Plan and all Medicaid policies and procedures, including those regarding services for children with behavioral or emotional disorders. Miss. Code Ann. § 43-13-107, § 43-13-117. Defendant Robinson is also responsible for ensuring that Mississippi's Medicaid program operates in compliance with state and federal law. Defendant Robinson is sued in his official capacity.

13.     Defendant Patricia Ainsworth is the Chair of the State Board of Mental Health, and is responsible for appointing a full-time Executive Director of the Department of Mental Health, which administers mental health services for children. Defendant Ainsworth and the State Board of Mental Health are responsible for establishing and administering all mental health services on a state and regional level for the State of Mississippi; and supervising, coordinating and establishing standards for all operations and activities in Mississippi related to mental health and the provision of mental health services, including those regarding services for children with behavioral or emotional disorders. Miss. Code Ann. § 41-4-7. Defendant Ainsworth is sued in her official capacity.

14.     Defendant Edwin C. LeGrand serves as the Executive Secretary of the State Board of Mental Health and is the Executive Director of the Mississippi Department of Mental Health, the

state agency responsible for administering, coordinating, developing, improving, and planning all services for individuals living with mental illness in Mississippi. Miss. Code Ann. § 41-4-1. Defendant LeGrand is responsible for establishing and administering all mental health services on a state and regional level for the State of Mississippi; supervising, coordinating and establishing standards for all operations and activities in Mississippi related to mental health and the provision of mental health services, including those regarding services for children with behavioral or emotional disorders, Miss. Code Ann. § 41-4-7; obtaining funds from the State Legislature for Medicaid services; and organizing programs and services in a manner that maximizes funding through the Division of Medicaid. Miss. Code Ann. § 43-13-111. Defendant LeGrand is sued in his official capacity.

## JURISDICTION AND VENUE

15.     This is a class action lawsuit authorized by 42 U.S.C. § 1983 to redress the ongoing deprivation under color of state law of rights guaranteed by the United States Constitution and federal statutes. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

16.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district, and because all Defendants named herein reside in, maintain offices in, or are responsible for enforcing the laws relevant to this litigation in this district.

## CLASS ALLEGATIONS

17.     This action is properly maintained as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. Plaintiffs represent a statewide class of Medicaid-eligible children under the age of twenty-one who have a behavioral or emotional disorder and who need intensive home- and community-based mental health services. "Intensive home- and

community-based services" includes: a comprehensive assessment, intensive case management services, mobile crisis services, in-home therapy, behavioral support services, family education and training, and therapeutic foster care.

18.     The size of this class is so numerous that joinder of all members is impracticable. There are thousands of children with an emotional or behavioral disorder in Mississippi. In 2009, over 1300 children and youth were placed in a psychiatric residential treatment facility or therapeutic group home; and in 2008 over 700 children were committed to a state hospital. The great majority of these children could and should have been served instead in their own homes or in a therapeutic foster home.

19.     There are questions of law and fact common to all class members, including:

a) whether Defendants' failure to provide medically necessary intensive home- and community-based services violates the EPSDT mandate of Title XIX of the Social Security Act;

b) whether Defendants violate the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act by failing to provide mental health services in the most integrated setting.

20.     The claims of the named Plaintiffs are typical of the claims of the Plaintiff class. As a result of the Defendants' policies, practices, and procedures, the individual Plaintiffs and class members are not provided with intensive home-based and community-based services to treat or ameliorate their behavioral or emotional disorders; and are currently segregated, or at risk of segregation, due to Defendants' failure to provide medically necessary and legally mandated services.

21.     The named Plaintiffs will fairly and adequately represent the interests of the class. They possess a strong personal interest in the subject matter of the lawsuit, and are represented by experienced counsel with expertise in class action litigation on behalf of children and

adolescents in federal court. Counsel have the legal knowledge and the resources to fairly and adequately represent the interests of all class members in this action. Fed. R. Civ. P. 23(a)(4).

22.     Defendants have acted and refuse to act on grounds generally applicable to the class in that Defendants' policy and practice of violating the Plaintiffs' rights has affected all class members. Accordingly, final injunctive and declaratory relief is appropriate for the class as a whole.

## CONSTITUTIONAL AND STATUTORY BACKGROUND

### A.     The Federal Medicaid Program

23.     Medicaid is a voluntary, cooperative, federal-state program under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.,* designed to provide medically necessary health and mental health care to, among others, low-income children and families.

24.     Participation in the Medicaid program is voluntary; and states that choose to participate receive federal matching funds for their own programs. To receive federal matching funds, states must adhere to the requirements set forth in Title XIX of the Social Security Act and its implementing regulations. 42 C.F.R. §§ 430.0 *et seq.* In addition, states must have a state plan that describes their administration of the program and identifies the services they will provide to eligible beneficiaries. 42 U.S.C. § 1396a.

25.     Federal law requires states to fully implement the Early and Periodic Screening, Diagnostic and Treatment (EPSDT) program of Medicaid. 42 U.S.C. § 1396a(a)(43); 42 U.S.C. § 1396d(a)(4)(B); 42 U.S.C. § 1396d(r). The purpose of the EPSDT program is to ascertain children's physical and mental health conditions and ensure children receive needed services "to correct or ameliorate defects and physical and mental illnesses and conditions . . . ." 42 U.S.C. § 1396d(r)(5). Under EPSDT, states are required to provide screening services to identify health

and mental health conditions and illness. 42 U.S.C. § 1396d(r)(1). States must also provide needed diagnostic and treatment services to correct or ameliorate health or mental health conditions. 42 U.S.C. § 1396a(a)(43)(C); 42 U.S.C. § 1396d(r)(5). Needed services must be provided whether or not such services are included in the state plan. 42 U.S.C. § 1396d(r)(5); 42 C.F.R. § 441.56(c).

26.     Mississippi has chosen to participate in the Medicaid program; and therefore must provide EPSDT services to eligible children under the age of 21.

27.     For children with significant emotional and behavioral disorders, intensive home- and community-based services are medically necessary to treat and ameliorate their disorders.

28.     Intensive home- and community-based services are typically designed and supervised by a "child and family team." By their nature, such services are flexible and individualized, aimed at improving functioning in the home, in school, and in the community. They include, but are not limited to, a comprehensive assessment, intensive case management services, mobile crisis services, in-home therapy, behavioral support services, family education and training, and therapeutic foster care.

29.     Mississippi has not included intensive home-and community-based services in its state Medicaid plan; nor does Mississippi otherwise make intensive home- and community-based services available on a consistent, statewide basis to children for whom the services are medically necessary. Outside of its Medicaid program, Mississippi offers a limited amount of intensive home- and community-based services to a limited number of children in limited areas of the state, through a federal demonstration grant program called MYPAC. To be eligible, a child must meet the clinical criteria for admission to a psychiatric residential treatment facility; and MYPAC has an upper limit on the number of children it can serve each year. MYPAC does

not provide therapeutic foster care services.[1]   Currently, 180 youth are enrolled in the program. During the last fiscal year, fewer than 200 children received services through MYPAC.   In contrast, close to 2,000 youth received mental health services in an institutional setting during the last fiscal year: 557 children were committed to a state hospital, 888 were placed in a psychiatric residential treatment facility, 476 were placed in a therapeutic group home, and hundreds more cycled through emergency rooms and other acute care facilities for crisis care and treatment.

**B.      The Americans with Disabilities Act and Section 504 of the Rehabilitation Act**

30.      Title II of the Americans with Disabilities Act prohibits public entities from discriminating against or excluding a qualified individual with a disability from participating in the benefits of services, programs, or activities of the public entity on the basis of disability.  42 U.S.C. § 12132; 28 C.F.R. § 35.130.

31.      The ADA requires public entities to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  28 C.F.R. § 35.130(d).

32.      Public entities also must make reasonable modifications in polices, practices, or procedures when necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that the modifications would fundamentally alter the nature of the service, program, or activity.  28 C.F.R. § 35.130(b)(7).

33.      Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, imposes identical requirements on state programs and activities that receive federal financial assistance.

---

[1] A limited number of children in the custody of the Mississippi Department of Human Services have access to therapeutic foster care.  However, these foster homes do not provide intensive services and supports; and therapeutic foster care is not available as a Medicaid-covered service.

34.     The Defendants discriminate against the named Plaintiffs and the Plaintiff class by failing to provide them services in the most integrated setting appropriate to their needs. An integrated setting is one that allows individuals to live in their home or a home-like setting with natural family supports and the opportunity to attend school and participate in their communities with non-disabled peers. Defendants offer only a negligible amount of intensive home- and community-based services to children and have chosen instead to serve children in needlessly segregated settings.

35.     Hospitals, psychiatric residential treatment facilities, and group homes are all restrictive settings that severely limit a child from interacting with her family, school, peers, and community. Additionally, out-of-home placements exacerbate many children's behavioral and emotional problems by severing these important connections. By failing to provide adequate home-based and community-based mental health services, the Defendants have and continue to discriminate against the Plaintiff class by unnecessarily segregating them in violation of the ADA and Section 504.

## STATEMENT OF FACTS

### A. The Crisis for the Plaintiff Class

36.     The evidence from mental health and child welfare experts is clear that intensive home- and community-based services are medically necessary for children with significant behavioral or emotional disorders. *See generally Community Treatment for Youth: Evidence-Based Interventions for Severe Emotional and Behavioral Disorders* (Barbara J. Burns & Kimberly Hoagwood eds., 2002). These services, which are mandated by law, include a comprehensive assessment, typically by a child and family team, intensive case management services, mobile

crisis services, in-home therapy, behavioral support services, family education and training, and therapeutic foster care.

37.     The evidence is equally clear that institutional care not only fails to meet children's needs, but is often counterproductive and harmful.   Institutional care deprives children of normalizing experiences, isolates them with other children who have behavior problems, and exacerbates feelings of anxiety and concern.   Subjecting children with mental illness to unnecessary institutional care constitutes discrimination in violation of federal law.

38.     Notwithstanding the overwhelming evidence supporting the need for intensive home- and community-based services, Defendants have failed to provide these services to the named Plaintiffs and class members.

39.     The majority of children with significant behavioral or emotional disorders seek services through their regional community mental health center.  These centers are certified and overseen by Defendants.  Intensive home-based and community-based services are not available through these centers.[2]  The majority of children served by the centers receive infrequent office-based therapy or counseling and medication, which alone are inadequate to meet the needs of children with significant behavioral or emotional disorders.   Some community mental health centers are open only a few days a week.

40.     Instead of providing intensive home- and community- based services, Defendants have relied on institutional settings where children with behavioral or emotional disorders are segregated for extended periods of time, often far from their home.  Mississippi's mental health care system is so highly reliant on institutional care that children with significant behavioral or

---

[2] The exception to this is the Pine Belt Mental Health Center, which provides some intensive home-based and community-based services through a federal system of care grant called commUNITY Cares.  However, very few children receive these services.  The Pine Belt Mental Health Center covers nine counties and serves over 3,000 children and youth.

emotional disorders can expect to make the rounds of at least two state-run facilities, two to three private facilities, and a handful of emergency rooms, acute care facilities, and therapeutic group homes. This adds up to years of institutionalization before a child's twenty-first birthday, and severe and permanent disruptions to their family, education and personal development.

41.     Even when a child experiences some benefits from institutional care, these gains dissipate quickly upon discharge because the community mental health system is so weak and fragmented. The Defendants' discharge planning for children leaving the State's institutions consists of nothing more than a referral to the local community mental health center, where it can take weeks to get an appointment, and  care is limited to infrequent  outpatient counseling and medication. Consequently, children return to their families' care with little services or supports. Not surprisingly, many children quickly deteriorate, only to face another traumatic cycle of institutionalization and isolation.

**B**.     **The Crisis for Individual Plaintiffs**

42     Plaintiff **J.B.** is a seventeen year-old boy from North Central Mississippi who has been in the state's foster care system since he was old enough to walk. The Department of Human Services initially removed J.B. from his home on account of abuse and neglect by his mother.

43.     In J.B.'s thirteen years in the foster care system, he has been hospitalized at least five times, placed in six different foster homes, five residential treatment facilities, more than ten group homes and shelters, and locked in a secure detention facility on at least twelve occasions when a group home or shelter could not handle J.B.'s behavioral and emotional problems. J.B.'s "problem behaviors" have been described as "multiple hospitalizations" and "unsuccessful foster placements." J.B. needs but has never received intensive home-based and community-based services.

44.     DHS attempted to reunify J.B. with his mother in 2009; however, he was removed and placed in a group home after he contacted the police to break up a fight between his mother and her boyfriend.  The group home asked J.B. to leave because of his difficulty controlling his behavior.  When J.B. ran away, he was placed in a secure detention facility until a bed became available for him at a private mental health facility.  He was then committed to the Specialized Treatment Facility ("STF") in May, 2009.

45.     J.B. is currently in the physical custody of the Department of Mental Health, which operates  STF  The examining physician who certified J.B.'s placement in a residential facility did not identify a medical need for residential placement, but rather stated that residential treatment was necessary because J.B.'s mother had  resumed drinking and could not offer a stable environment.

46.     During his intake interview at STF, J.B. stated that his three wishes in life are: "To rewind time.  To show my mama that I can be a better child.  To be independent and on my own."  J.B. just graduated from high school with an occupational diploma.  While at STF, J.B. has written an autobiography to memorialize both the meaningful and traumatic events in his life, which he hopes to publish one day.

47.     J.B. apparently remains confined to STF so he can complete one month of a job-training program —an activity that could easily be accommodated if he lived in a home- or community-based setting.

48.     J.B. will not receive intensive home-based and community-based services upon discharge from STF.   J.B.'s community mental health center does not offer such services.

49.    Plaintiff **L.P.** is a seventeen year old girl from the Jackson metropolitan area, and was placed in DHS custody in August 2009 when it was discovered that she had been sexually abused.

50.    L.P. has an extensive history of abuse and trauma. Beginning at a young age, she was sexually abused by a male relative, and other men. L.P. began to display emotional and behavioral problems around the age of eight. Her symptoms worsened over time, until she was hospitalized at the age of ten. Since that time, L.P. has been hospitalized four more times and placed in a long-term residential treatment facility, but has never received intensive home-based and community-based services. These intensive services are not offered by her community mental health center.

51.    L.P. is a good student, earning A's and B's, and has successfully maintained a job at a fast food restaurant. Her wishes in life include: "For my family to be back to normal. A place for me to live, so it can be like the loving family that I have always wanted."

52.    DHS placed L.P. in a foster home in August, 2009, after a period of hospitalization. When L.P. ran away from the foster home, she was held in a maximum security detention facility for two weeks until she was committed to the state psychiatric hospital for expressing suicidal thoughts. L.P.'s foster care caseworker described her chief problem as "depression, anxiety – lack of supervision." L.P.'s state hospital discharge plan was for L.P. "to go to long-term residential treatment."

53.    After stabilizing at the state hospital, L.P. was transferred to STF, where she recently obtained her G.E.D. Her discharge plan suggests that L.P. live with her father, but does not include any arrangements to connect L.P. with needed intensive home-based and community-based services.

54.     Plaintiff **L.M.** is a sixteen year old boy with bipolar disorder and a history of sexual trauma. L.M. has been hospitalized four times and placed in long-term residential treatment. He is currently living with his mother in the Delta, and is not receiving intensive mental health services.

55.     L.M. experienced a succession of traumatic events before his thirteenth birthday. L.M. was molested at age seven, and shortly after that he began to display disruptive behaviors at home and school. When L.M. was ten, his father died unexpectedly; and the next year L.M. endured more sexual abuse and was hospitalized for mental health treatment. When he was thirteen, he discovered his grandmother's body after she passed away, and he lost both his aunt and uncle the following year. L.M.'s behavior at home and school became increasingly challenging, and he was hospitalized in acute care facilities throughout his early teens when his mother could no longer handle his behavior at home.

56.     Despite trauma and disruptions to his life, L.M. remains a lively, outgoing child who enjoys dancing and superman. L.M. has a passion for baking pastries and desserts, which he learns to make by watching cooking shows on television. His dream in life is to attend culinary school to become a pastry chef.

57.     L.M. has not received intensive home-based and community-based services, but he has spent years of his life in segregated, institutional settings. In addition to five hospitalizations in acute psychiatric facilities, L.M. was committed to the state hospital for five months in February, 2008. At the end of his commitment, Defendants transferred L.M. to STF, where he stayed for close to a year. L.M.'s discharge plan from STF consisted of a referral to his community mental health center, which does not provide intensive home-based and community-based services. When L.M.'s behavior deteriorated within a few months of his discharge, he was hospitalized for

two weeks and committed to the state's juvenile training school less than two months later because L.M. had exhausted other institutional options. L.M. was recently released from the training school, but has not been provided with the intensive mental health services he needs.

58.     Plaintiff **L.S.** is a twelve year old boy from Southwest Mississippi. He is currently placed at the CARES Center, a private residential treatment center in Jackson, Mississippi – close to two hours away from his home.

59.     L.S. entered the foster care system at the age of four after a family tragedy.     L.S. was eventually placed in the custody of his aunt, who is now his legal guardian.

60.     L.S. began to display behavioral and emotional problems at a young age, and was hospitalized at the age of eight, and again at age nine. He was placed in a private residential treatment center when he was ten, and is currently on his third placement in a long-term residential treatment center.

61.     L.S. has received only limited outpatient counseling and medication management from his community mental health center, which is only open two days per week

62.     L.S. recently told his therapist that his favorite thing to do is visit friends and family. L.S. wants to return to his home, and his aunt worries about the disruption and distance imposed by his placement so far away. L.S.'s aunt wants L.S. to return home, but L.S. needs intensive home-based and community-based services to support this transition.

### CAUSES OF ACTION

### Count I – EPSDT Services, 42 U.S.C. § 1396d *et seq.*

63.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

64.     In violation of the EPSDT provisions of the Medicaid Act, Defendants, while acting

under the color of law, have failed to provide Plaintiffs with medically necessary intensive

home- and community-based mental health services when such services are medically necessary

to treat or ameliorate their conditions.  42 U.S.C. § 1396a(a)(43), § 1396d(r).

65.     Defendants failure to provide statutorily-mandated mental health services violates 42

U.S.C. § 1983 by depriving Plaintiffs of their statutory rights under the Medicaid Act to receive

medically necessary mental health services.

### Count II – Americans with Disabilities Act and Section 504 of the Rehabilitation Act

66.     Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as though

fully set forth herein.

67.     Children with behavioral or emotional disorders are qualified individuals with disabilities

within the meaning of the ADA, and are "otherwise qualified individuals with a disability"

within the meaning of the Rehabilitation Act.

68.     Defendants are public entities subject to the provisions of the ADA.  Defendants receive

federal financial assistance, and are thus subject to the provisions of the Rehabilitation Act.

69.     Defendants have failed to administer services, programs, and activities in the most

integrated setting appropriate to the needs of children with emotional or behavioral disorders.

Defendants have discriminated against these children by needlessly placing them in institutional

settings to receive mental health care.  While in these settings, children are segregated from the

community and prevented from maintaining meaningful contact with their families, schools, and

communities.

70.     The relief sought by Plaintiffs would not require the creation of services that are new to

Mississippi or inconsistent with Mississippi's stated public policies.  Defendants claim to support

and embrace the reforms sought by Plaintiffs in this case. The relief sought would further the Defendants' stated goal to convert to a community-based system of mental health care. Moreover, the relief sought by Plaintiffs would not impose unreasonable additional costs on Defendants' service system. Defendants are already legally mandated to provide Plaintiffs intensive home-based and community-based services. Furthermore, the relief sought by Plaintiffs could be funded by the savings Mississippi would realize from reduced reliance on institutional care. Accordingly, the relief sought by Plaintiffs would not amount to a fundamental alteration within the meaning of the ADA or Section 504.

## REQUEST FOR RELIEF

WHEREFORE, the plaintiffs respectfully request that this Court:

1. Certify this case as a class action pursuant to Fed. R. Civ. P. 23;

2. Declare unlawful Defendants' failure to comply with the mandates of the Medicaid Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act;

3. Enter a preliminary and permanent injunction enjoining Defendants from subjecting members of the Plaintiff class to practices that violate their rights under the Medicaid Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act;

4. Award to the Plaintiffs the reasonable costs and attorney's fees incurred in the prosecution of this action;

5. Award such other equitable and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this the _10_ day of March, 2010.

Vanessa Carroll, Miss. Bar No. 102736
Sheila A. Bedi, Miss. Bar No. 101652
Mississippi Youth Justice Project
A Project of the Southern Poverty Law Center
921 N. President St. Suite B
Jackson, Mississippi 39202
601-948-8882 (phone)
601-948-8885 (fax)

Robert B. McDuff, Miss. Bar. No. 2532
767 North Congress Street
Jackson, Mississippi 39202
601-969-0802 (phone)
601-969-0804 (fax)

Ira Burnim, D.C. Bar No. 406145*
The Bazelon Center for Mental Health Law
1101 15th St. NW, Suite 1212
Washington, D.C. 20005
202-467-5730 (phone)
202-223-0409 (fax)
*pro hac vice motion to be filed

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served

by hand delivery on:

> Harold Pizzetta, III
> Special Assistant Attorney General
> Chief, Civil Litigation Division
> Mississippi Office of the Attorney General
> Walter Sillers Building
> 550 High Street, Suite 1200
> Jackson, MS 39201

This _10_ day of March, 2010.

Vanessa Carroll, Miss. Bar No. 102736