# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

_____
)
MARY TROUPE, *et al.*                            )
)
      Plaintiffs,                              )
)
      v.                                             )        CASE NO. 3:10cv153HTW-LRA
)
GOVERNOR HALEY BARBOUR, *et al.*         )
)
      Defendants.                              )
)
_____ )

## STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517[1] because this litigation implicates the proper interpretation and application of the Early and Periodic Screening, Diagnostic and Treatment ("EPSDT") provisions of Title XIX of the Social Security Act ("Medicaid Act"), 42 U.S.C. § 1396 *et seq.,* and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*.  Plaintiff Medicaid-eligible children allege that they have experienced unnecessary institutionalization and other serious harms as a result of defendants' failure to provide or arrange for medically necessary, mental health services required under the EPSDT provisions of the Medicaid Act.  (*See, e.g.,* Compl. ¶¶ 1-3, 40, 43,50, 57, 58-62.)

---

[1] Under 28 U.S.C. § 517, "[t]he Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

The denial of EPSDT services results in significant harm to children with behavioral or emotional disorders, including exacerbation of their conditions, deterioration to the point of crisis, and unnecessary institutionalization in violation of the ADA.  Accordingly, the United States has a strong interest in the resolution of this matter and respectfully requests that this Court deny Defendants' Motion to Dismiss or for Judgment on the Pleadings as to Count I of Plaintiffs' Complaint.  Plaintiffs have alleged concrete and actual injuries caused by the defendants' policies and practices, such that they have standing to assert their Medicaid Act claim.  They seek prospective, injunctive relief to correct defendants' alleged ongoing violation of federal law.  Accordingly, their claim is not barred by Eleventh Amendment immunity. Finally, under well-settled law, plaintiffs' Medicaid Act claim is privately enforceable under 42 U.S.C. § 1983.

**FACTUAL ALLEGATIONS**

Plaintiffs are Medicaid-eligible children with behavioral or emotional disorders who need intensive mental health services to correct or ameliorate their conditions.  (Compl. ¶ 4.) Defendants are the Governor of the State of Mississippi, the Director of the Mississippi Division of Medicaid, the Chair of the Mississippi Board of Mental Health and the Executive Director of the Mississippi Department of Mental Health (collectively, "defendants" or "the State"). (Compl. ¶¶ 11-14.)  They are responsible for, respectively, ensuring that all Mississippi agencies comply with applicable federal law, administering the Mississippi Medicaid program, and administering, coordinating and planning the State's mental health service system.  (Compl. ¶¶ 11-14.)

Plaintiffs allege that defendants fail to ensure that medically necessary, intensive mental health services are provided to Medicaid-eligible individuals under the age of twenty-one who

have been diagnosed with significant behavioral or emotional disorders.  (Compl. ¶¶ 2, 4).  Such services include "comprehensive assessment[s], typically by a child and family team, intensive case management services, mobile crisis services, in-home therapy, behavioral support services, family education and training, and therapeutic foster care" to treat or ameliorate their disorders. (Compl. ¶ 36.)  For members of the plaintiff class, these services are medically necessary to treat and ameliorate their disorders. (Compl. ¶ 27.)

Plaintiffs allege that as a result of defendants' failure to ensure provision of these medically necessary, mental health services, they have cycled through hospitals, emergency rooms, acute care facilities and other institutional settings that do not provide adequate care or long-term relief.  (Id. ¶¶ 2-3).   They further allege that the State's "system of mental health care is so weak and uncoordinated that most children are released from facilities with little or no follow-up community mental health care."  (Id. ¶ 3.)  Plaintiffs typically wait months for an appointment at a community mental health center, and when services are finally provided, "they consist of little more than minimal medication management and outpatient counseling two times a month."  (Id. ¶ 3.)  Such limited services are inadequate for children with chronic and significant, behavioral and emotional disorders.  (Id. ¶ 3.)  As a result of these inadequate and ineffective services, plaintiffs deteriorate to the point of crisis, face further cycles of isolation and institutionalization, and experience "serious, long term and irreversible harm."  (Id. ¶ 3-4.) Institutional care not only fails to meet the needs of children with serious emotional disorders, but is also harmful because it "deprives children of normalizing experiences, isolates them with other children who have behavioral problems, and exacerbates feelings of anxiety and concern." (Id. ¶ 37.)

Plaintiffs seek an order from this Court "requiring [d]efendants to provide intensive home- and community-based services to the named [p]laintiffs and other Medicaid-eligible children for whom such services are medically necessary."  (Pls.' Opp. to Defs.' Mot. to Dismiss or for Judgment on the Pleadings, ECF No. 24 ("Pls.' Mem.") at 23.)  Two of the four defendants have moved to dismiss, or, in the alternative, for judgment on the pleadings on, Count I of the Complaint.  (Motion to Dismiss or for Judgment on the Pleadings, ECF No. 15, May 27, 2010.)

## STATUTORY AND REGULATORY BACKGROUND

Congress enacted the Medicaid Act in 1965, thereby establishing a medical assistance program ("Medicaid") cooperatively funded by the federal and state governments.  State participation in Medicaid is voluntary, but once a state elects to participate, it is required to provide certain minimum mandatory services, including EPSDT services. *See* 42 U.S.C. § 1396 *et seq..; Frew v. Hawkins,* 540 U.S. 431, 433 (2004).  Under the EPSDT provisions of the Medicaid Act, participating states must provide coverage to Medicaid-eligible individuals under the age of twenty-one for all medically necessary treatment services described in the Medicaid Act at 42 U.S.C. § 1396d(a), which sets out the scope of the traditional Medicaid benefits package.  42 U.S.C. § 1396a(a)(43); 42 U.S.C. § 1396d(a)(4); 42 U.S.C. § 1396d(r)(1)-(5).  Such treatment services must be covered for Medicaid-eligible children even if the State has not otherwise elected to provide such coverage for other populations.  42 U.S.C. § 1396d(r)(5).

In adding the EPSDT requirements to the Medicaid Act in 1967, Congress "intended to require States to take aggressive steps to screen, diagnose and treat children with health problems." *Stanton v. Bond*, 504 F.2d 1246, 1249 (7th Cir. 1974).  A  fundamental purpose of the EPSDT mandate is thus to "[a]ssure that health problems found are diagnosed and treated

early, before they become more complex and their treatment more costly." U.S. Dep't of Health and Human Servs., Centers for Medicare and Medicaid Servs., Pub. No. 45, State Medicaid Manual (hereinafter "State Medicaid Manual") § 5010.B.  The EPSDT mandate also addressed Congress' concern about "the variations from State to State in the rates of children treated for handicapping conditions and health problems that could lead to chronic illness and disability." *Stanton*, 504 F.2d at 1249.  As originally drafted, the EPSDT provisions of the Medicaid Act entitled all Medicaid-eligible individuals under the age of twenty-one to screening and diagnosis, but Congress directed the Secretary of Health and Human Services to promulgate regulations defining the specific services that would be used for treatment of conditions identified during a health screen.  *See* Pub. L. No.  90-248, 81 Stat. 821 §§ 224, 302 (1967).

In 1989, Congress amended the Medicaid Act to clarify that states must ensure that comprehensive treatment services are available under the EPSDT program. Omnibus Budget and Reconciliation Act of 1989, Pub. L. No. 101-239, 103 Stat. 2219 § 6403 (1989); *see also* Senate Finance Committee Report, read into Congressional Record at 135 Cong. Rec. S13057-03 at *S13233, 1989 WL 195142 (Oct. 12, 1989) (noting that the 1989 amendments were intended to "require that states provide to children *all treatment items and services that are allowed under federal law* and that are determined to be necessary . . . even if such services are not otherwise included in the State's plan") (emphasis added); H.R. Rep. No. 101-386, at 453 (1989) (Conf. Rep.);  *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 589-90 (5th Cir. 2004) ("Congress in the 1989 amendment imposed a mandatory duty upon participating states to provide EPSDT-eligible children with all the health care, services, treatments and other measures described in § 1396d(a) of the Act, when necessary to correct or ameliorate health problems discovered by screening, regardless of whether the applicable state plan covers such services.").

In its current form, the EPSDT mandate requires states to effectively inform EPSDT-eligible individuals "of the availability of [EPSDT] services," 42 U.S.C. § 1396a(a)(43)(A),  and provide or arrange for "screening services in all cases where they are requested,"  42 U.S.C. § 1396a(a)(43)(B).  Thus, a state must provide comprehensive assessments of children with serious emotional or behavioral disorders.  42 U.S.C. § 1396a(a)(43)(B); *see also Rosie D. v. Patrick*, 410 F. Supp. 2d 18, 52-53 (D. Mass. 2009) ("[T]he EPSDT provisions of the Medicaid statute require, by their very language, comprehensive assessments of children with [serious emotional disturbance].").

 State must also arrange for (either directly or through referral to other agencies) corrective treatment, the need for which is discovered by the screening. 42 U.S.C. § 1396a(a)(43)(C).  The scope of the treatment to be provided for is defined by 42 U.S.C. § 1396d(r) and includes dental, hearing and vision services, and "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in [42 U.S.C. § 1396d(a)] . . . to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are [otherwise] covered under the state plan . . . ."  42 U.S.C. § 1396d(r)(1)-(5); *see also* 42 C.F.R. § 440.130.

Under § 1396d(r)(5), states must "cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under § 1396d(a)."  *Dickson*, 391 F.3d at 590.  Thus, a service must be covered by the EPSDT program if it can properly be described as one of the services listed in the Medicaid Act, 42 U.S.C. § 1396d(a).  *See, e.g.*, *Dickson*, 391 F.3d at 594-97 (finding that incontinence supplies were within the scope of home health services described in § 1396d(a) and that the state violated EPSDT provisions by denying Medicaid-eligible child such services); *Parents' League for Eff. Autism Serv. v. Jones-Kelley*,

339 Fed. Appx. 542 (6th Cir. 2009) (affirming preliminary injunction enjoining state from restricting rehabilitative services for Medicaid-eligible children with autism).

Under 42 U.S.C. § 1396d(a)(13), a state is permitted to cover intensive case management services, mobile crisis services, in-home therapy, in-home behavioral support services, family support and training, and therapeutic foster care as "diagnostic, screening, preventative, and rehabilitative services . . . ."[2]  *See, e.g.,* Massachusetts State Plan for Medical Assistance, State Plan Amendment # 08-004, effective Apr. 1, 2009 (relevant excerpts attached as Exhibit A) (covering services under Rehabilitation services); Oregon State Plan for Medical Assistance § 3.1a, pp. 6-f—6-f.2 (relevant excerpts attached as Exhibit B) (covering services as Behavioral Rehabilitation Services).  Accordingly, the State must cover such services if necessary to correct or ameliorate a mental health condition.  *Dickson*, 391 F.3d at 595-96 ("CMS's approval of state plans affording coverage for [the services sought by plaintiff] demonstrates that the agency construes [the Medicaid Act] as encompassing that type of medical care or service" and therefore required to be covered under EPSDT);  *Rosie D.*, 410 F. Supp. 2d at 52-53 (state violated EPSDT provisions by failing to provide to children with serious emotional disorders adequate and effective mobile crisis services, comprehensive assessments, ongoing case management and monitoring, and in-home behavioral support services); *see also Katie A. v. L.A. County*, 481 F.3d 1150, 1160 (9th Cir. 2007) (holding that states have an obligation under the EPSDT mandate to provide effective in-home behavioral support services to children with mental illness).

States must provide all component services required under § 1396d(a), and they must provide them effectively.  *Katie A.*, 481 F.3d at 1159 ("States also must ensure that the EPSDT services provided are reasonably effective.")   Thus, where necessary to meet the needs of

---

[2]  Section 1396d(a)(13) defines as covered medical services any "diagnostic, screening, preventative, and rehabilitative services, including any medical or remedial services . . . for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level."  42 U.S.C. § 1396d(a)(13).

children with serious emotional or behavioral disorders, the services must be provided in a coordinated fashion. *Id*. at 1161.  Many children will need all services for the effective treatment of their condition, and the delivery of all services in a coordinated fashion will be necessary to avoid unnecessary and harmful institutionalization.

## ARGUMENT

### I.   <u>Standard of Review</u>

The Court should deny defendants' motion to dismiss.  On a motion to dismiss, the court accepts as true the well-pleaded factual allegations in the complaint and construes the complaint in favor of the plaintiff.  *Assoc. of American Phys. & Surg, Inc.. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010).  A complaint should be dismissed only where it appears that the facts alleged fail to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Defendants purport to move to dismiss for lack of subject matter jurisdiction.  However, because their challenge to standing and ripeness is based on an assertion that the Medicaid Act contains a different meaning than the one put forth by plaintiffs, it is a merits-based determination, and subject matter jurisdiction exists to resolve it.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998) ("Subject matter exists if the right to recover "will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.")  Whether addressed as a merits-based or jurisdictional issue, however, plaintiffs have stated a valid claim for violation of the Medicaid Act, and this Court has jurisdiction to adjudicate it.

The Complaint sets forth numerous factual allegations concerning defendants' failure to ensure that medically necessary, mental health treatment services are provided to Medicaid-eligible children, causing them to suffer ongoing harm.  (Compl. ¶¶ 1-4, 6-10, 36-62.)  Thus,

plaintiffs have alleged concrete, actual injuries-in-fact as a result of defendants' administration of the Mississippi EPSDT program, and their injuries would be remedied by a favorable court decision. Moreover, because they seek only prospective, injunctive relief to remedy an ongoing violation of federal law, plaintiffs' claims fall within the *ex parte Young* exception to Eleventh Amendment immunity. Finally, because the EPSDT provisions are privately enforceable under 42 U.S.C. § 1983, plaintiffs' claim is properly brought under that statute. Accordingly, this Court should deny defendants' motion to dismiss or for judgment on the pleadings as to Count I of the Complaint.

**II.    This Court Has Subject Matter Jurisdiction With Respect To Plaintiffs' Claims**

Defendants contend that plaintiffs cannot establish standing or ripeness to assert a claim for violation of the Medicaid Act because they have not submitted a claim for, and been denied, payment for services. (Defs.' Mem. of Auth. in Support of Mot. to Dismiss or for Judgment on the Pleadings, ECF No. 17 ("Defs. Mem.") at 7-8.) They further maintain that plaintiffs' claim for medically necessary services, as opposed to payment for such services, "seek[s] to compel Medicaid to act beyond its clear obligations" and thus the *ex parte Young* exception to Eleventh Amendment Immunity does not apply. (Defs. Mem. at 17.) Defendants' jurisdictional arguments are based on a fundamental misreading of the requirements of the Medicaid Act. The EPSDT provisions of the Medicaid Act require states to ensure that medically necessary services are provided—not just paid for. *See supra*, pp. 5-6. By virtue of defendants' alleged failure to provide adequate mental health services, plaintiffs are experiencing ongoing injury that could be remedied by a favorable decision from this Court. Thus, plaintiffs have stated a ripe and cognizable claim—which they have standing to assert—under the Medicaid Act, and defendants are not immune from suit.

9

### A.        Plaintiffs Have Standing to Assert their Medicaid Act Claim

To demonstrate standing, a plaintiff must: (1) have suffered injury in fact – defined as an "invasion of a legally protected interest which is (a) concrete and (b) "actual or imminent, not 'conjectural' or 'hypothetical;" (2) demonstrate a causal connection that is "fairly trace[able]" to the conduct complained of; and (3) show that a favorable decision will "likely" address plaintiff's injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The allegations in the Complaint clearly meet each of these requirements.  Specifically, plaintiffs' complaint demonstrates their concrete and particularized injury – the unavailability of statutorily mandated services – that is caused by defendants' failure to ensure that these services are available.

Defendants assert that plaintiffs have not suffered an injury sufficient to confer standing because they have not alleged that they applied for, and were denied, payment for services. (Defs' Mem. at 7-8.)  Defendants' view of their obligation under the EPSDT provisions is incorrect and their reliance on *Equal Access for El Paso, Inc. v. Hawkins*, 562 F.3d 724, 727 (5th Cir. 2009) in support of their interpretation is misplaced.   *Equal Access* did not involve the EPSDT provisions of the Medicaid Act.   Rather, it involved a provision of the Medicaid Act not at issue here, namely § 1396a(a)(8) (requiring "medical assistance" to be delivered with 'reasonable promptness').   *Equal Access*, 562 F.3d at 727.

In contrast, the EPSDT provisions at issue here, by their plain language, require states to provide or arrange for the provision of covered EPSDT services.  Subsection (B) of 42 U.S.C. § 1396a(a)(43) states that a state plan must "provide for . . . providing or arranging for the provision of such screening services in all cases where they are requested[.]"  42 U.S.C. § 1396a(a)(43)(B).  Similarly, Subsection (C) states that a state plan for medical assistance must "provide for . . . arranging for (directly or through referral to appropriate agencies, organizations,

or individuals) corrective treatment the need for which is disclosed by such child health screening services." 42 U.S.C. § 1396a(a)(43)(C).  Thus, as is evidenced by the plain language of the statutory provisions and their implementing regulations, the EPSDT provisions obligate states to ensure that medically necessary services are available, accessible and provided, either by providing them directly or by arranging for them through "appropriate agencies, organizations, or individuals[.]"  42 U.S.C. § 1396a(a)(43).

Defendants' interpretation of what is required of states under the EPSDT provisions is not only inconsistent with the provisions' plain language, but it also flies in the face of the legislative history of those provisions.  Prompting the enactment of and amendments to these provisions was Congress' concern that Medicaid-eligible children were not *actually receiving* the screening, diagnosis and treatment services to which they were entitled, despite the availability of funding.  *See* Senate Finance Committee Report, read into Congressional Record at 135 Cong. Rec. S13057-03 at S13233, 1989 WL 195142; *see also Stanton*, 504 F.2d 1250 ("Senate and House Committee reports emphasized the need for extending outreach efforts to create awareness of existing health care services, to stimulate the use of these services, and to make services available so that young people can receive medical care before health problems become chronic and irreversible damage occurs.")  Thus, the EPSDT provisions require participating states to ensure that Medicaid-eligible children receive the "screening" services and "corrective treatment" to which they are entitled.  Requiring only payment for services already "rendered" would not have addressed Congress' concerns and would run counter to the legislative purpose of the EPSDT provisions.

Consistent with this clear Congressional intent, numerous courts have recognized that the EPSDT provisions of the Medicaid Act mandate states to ensure that Medicaid-eligible

individuals under the age of twenty-one actually receive the care and services they need.  *See e.g., Katie A.*, 481 F.3d at 1161 (state has obligation to ensure that all services required by the EPSDT provisions are being provided to Medicaid-eligible children effectively); *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.,* 293 F.3d 472, 480 (8th Cir. 2002) (state must provide coverage for early intervention day treatment);  *Rosie D.,* 410 F. Supp. 2d  at 26 ("Congress' firm intent to ensure that Medicaid-eligible children actually receive services is powerfully underlined by provisions in the statute that place explicit duties on states to: (a) inform eligible children of the availability of [EPSDT] services, (b) provide or arrange for screening services . . . and (c) arrange for whatever corrective treatments are discovered to be needed."); *Disability Rights New Jersey v. Davey*, No. 3:05-cv-04723, ECF No. 90, Opinion and Order at 2 (D.N.J. Dec. 12, 2010) (holding that plaintiffs were entitled to access to specific, covered medical services, not merely payment for such services); *Parents' League for Effective Autism Servs. v. Jones-Kelley*, 339 F. App'x 542, 547-50 (6th Cir. 2009) (Applied Behavioral Analysis treatment for EPSDT-eligible children with autism).

Decades of regulatory interpretations of the Medicaid Act also demonstrate states' responsibility for ensuring the provision of medically necessary EPSDT services to eligible individuals under the Medicaid Act.  The Centers for Medicare and Medicaid Services ("CMS"), the federal agency charged with administering the Medicaid Act, outlines this mandate in its State Medicaid Manual.  In guidance to State Medicaid Agencies, CMS explains that:

> You must *provide for* screening, vision, hearing and dental services at intervals which meet reasonable standards of medical and dental practice established after consultation with recognized medical and dental organizations involved in child health care. You must also *provide for* medically necessary screening, vision, hearing and dental services regardless of whether such services coincide with your established periodicity schedules for these services.

> Additionally, the Act requires that any service which you are permitted to cover under Medicaid that is necessary to treat or ameliorate a defect, physical and mental illness, or a condition identified by a screen, must be provided to EPSDT participants regardless of whether the service or item is otherwise included in your Medicaid plan.

State Medicaid Manual, § 5110 (emphasis added).  Accordingly, defendants' assertion that a request for services and subsequent denial of funding is a precondition to standing is wrong.  Plaintiffs' injury and their standing arises from the State's alleged failure to act in accordance with their obligations under the EPSDT provisions – to identify and arrange for the provision of medically necessary services.

The Complaint alleges numerous, specific instances of defendants' failure to provide the intensive mental health services sought by the plaintiffs.  (*See* Compl. ¶¶ 42-62.)  Plaintiffs allege that most children with significant behavioral or emotional disorders living in the community are able to receive at most "infrequent office-based therapy or counseling and medication" through their regional mental health centers after a lengthy wait.  (Id. ¶ 39.)  These services are plainly inadequate and ineffective for children with chronic and long term mental health needs.  Because of the inadequacy of these minimal services, plaintiffs undergo cycles of institutionalization, which "deprive [them] of normalizing experiences, isolate them with other children who have behavior problems, and exacerbate feelings of anxiety and concern."  (Id. ¶ 37.)  Ameliorative effects of institutionalization—if any—quickly dissipate upon discharge due to the lack of available and effective community-based treatment.  (Id. ¶¶ 37, 41.)    For example, Plaintiff L.M. has been repeatedly hospitalized and committed to the state's juvenile training school as a result of defendants' failure to ensure provision of adequate community-based mental health services.  (Id. ¶ 57.)  Upon discharge from these facilities, L.M. has been unable to access effective services to treat or ameliorate his mental health conditions.  (Id.)

Similarly, Plaintiff L.P.'s community mental health center does not offer adequate mental health services. (Id. ¶¶ 50, 52.)  Without these services, L.P.'s emotional and behavioral conditions have worsened, and she has been hospitalized five times as a result.  (Id.)  Plaintiff J.B. has also not received treatment adequate to ameliorate or treat his mental health condition, leading to repeated hospitalizations and entry into a detention facility on at least twelve instances.   (Id. at ¶ 43).   The Complaint is thus replete with factual allegations concerning defendants' failure to provide medically necessary mental health services and the profound harm it has caused named plaintiffs and other members of the plaintiff class. (Compl. ¶¶ 1-5, 36-62.) Plaintiffs have therefore set forth sufficient allegations to establish standing to assert their Medicaid Act claim.

Indeed, defendants concede that they offer only a limited program of  home- and community-based services.  They point to a Medicaid-funded program called Mississippi Youth Programs Around the Clock (MYPAC), which provides certain home-based services to children with serious emotional disturbance.  (Defs. Mem. at 8-9.)  But, as plaintiffs allege, the program limits the number of children it serves each year, and only 180 children are enrolled – a mere fraction of the Medicaid-eligible children who are in need of such services. (Compl. ¶ 29.) Thus, the existence of that service does not invalidate plaintiffs' standing or cure defendants' alleged violations of federal law.  *See, e.g.*, *Chisholm v. Hood*, 133 F. Supp. 2d 894, 901 (E.D. La. 2001) (state violated EPSDT provisions where medically necessary services were provided to only a limited number of Medicaid-eligible children); *Memisovski v. Maram*, No. 92-1982, 2004 WL 1878332, *56 (N.D. Ill. 2004) (state violated EPSDT requirements despite provision of services to some children).

B.       **Defendants Are Not Immune From Suit**

Under the *ex parte Young* doctrine, suits against state officials seeking prospective, injunctive relief for ongoing violations of federal law are not barred by the Eleventh Amendment.  *Frew*, 540 U.S. at 437 (holding that consent decree remedying EPSDT violations was enforceable under *ex parte Young*); *U.S. ex rel. Barron v. Deloitte & Touche LLP*, 381 F.3d 438, 442 n.27 (5th Cir. 2004) ("[T]he Eleventh Amendment does not bar suits seeking to compel state officers to comply prospectively with the requirements of federal law."); *Memisovski v. Patla*, No. 98-1982, 2001 WL 1249615, 2-4 (N.D. Ill.  2001) (holding that suit fell within the *ex parte Young* exception where plaintiffs sought to enjoin state officials from violating EPSDT provisions of the Medicaid Act).  Here, the Complaint seeks prospective, injunctive relief against state officials for alleged ongoing violations of federal law.  (Compl. at 20.)  Thus, it falls squarely within the *ex parte Young* exception to Eleventh Amendment immunity.

Defendants argue that *ex parte Young* does not apply here because plaintiffs' request for EPSDT services seeks to compel defendants to act beyond their payment-only obligations under the Medicaid Act.  (Defs.' Mem. at 17.)   As explained above, however, the EPSDT provisions require more than mere payment.  *See supra*, pp. 5-6, 10-13.   States must provide or ensure provision of medically necessary services under the EPSDT provisions of the Medicaid Act. Thus, given that plaintiffs seek only to compel state officials to act in accordance with federal law, there can be no serious dispute that their claim falls within the *ex parte Young* exception to Eleventh Amendment immunity.

III.    **The EPSDT Provisions of the Medicaid Act Are Privately Enforceable Through 42 U.S.C. § 1983**

In *S.D. ex rel. Dickson v. Hood*, the U.S. Court of Appeals for the Fifth Circuit found that there is a private right of action to enforce the EPSDT provisions of the Medicaid Act through 42

U.S.C. § 1983. *Dickson*, 391 F.3d at 604-05. Applying the Supreme Court's framework for

determining the existence of a private right of action, the Fifth Circuit concluded that:

> [T]he [EPSDT] provisions of the Medicaid Act satisfy the first
> *Blessing* factor, as clarified by *Gonzaga*, in that the Act evidences
> a congressional intent to confer a right to the health care, services,
> treatments and other measures described in § 1396d(a), when
> necessary for EPSDT ameliorative purposes.

*Dickson*, 391 F.3d at 604 (citing *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) and

*Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002).). The Fifth Circuit further found that the

EPSDT provisions satisfy the second prong of the *Blessing* framework because the right to

EPSDT services asserted by the plaintiff was "not so 'vague and amorphous' that its enforcement

would 'strain judicial competence.'" *Id.* at 605 (citing *Blessing*, 520 U.S. at 340). Here too, the

right asserted by plaintiffs is not so "vague or amorphous" that its enforcement would "strain

judicial competence." The plaintiffs seek the Court's interpretation of the EPSDT provisions to

determine whether they require Mississippi to provide them with specific benefits, namely

intensive home- and community-based mental health services. It is clearly within the Court's

capacity to conduct such a statutory analysis.

Finally, the Fifth Circuit in *Dickson* found that the third *Blessing* factor was satisfied

"because the Medicaid statute unambiguously imposes EPSDT obligations on the participating

states." *Id.* at 605. Thus, defendants' assertion that plaintiffs do not have a private right of

action under 42 U.S.C. § 1983 to assert their Medicaid Act claim is unavailing.

Moreover, every other court to address the issue post-*Gonzaga* has held that the EPSDT

provisions create privately enforceable rights. *See Westside Mothers v. Olszewski*, 454 F.3d 532,

543 (6th Cir. 2006); *Salazar v. District of Columbia*, 729 F. Supp. 2d 257, 268-71 (D.D.C. 2010)

(holding that "§ 1396a(a)(43) does 'unambiguously' confer a private right of action[,]" the "right

is not too vague and amorphous to be enforced[,]" and the "Defendants' obligation is both clear

and enforceable[.]")"; *Parents' League for Effective Autism Servs.*, 565 F. Supp. 2d at 903-04

(holding that various EPSDT provisions, including § 1396a(a)(10) and (43), and

§ 1396d(a)(4)(B) and (r), "confer an unambiguous right on Plaintiffs that is enforceable through

a § 1983 claim" that is "not so 'vague and amorphous' as to defeat judicial enforcement[,]" and

that "imposes EPSDT obligations on the participating states."); *Clark v. Richman*, 339 F. Supp.

2d 631, 640 (M.D. Pa. 2004) (finding that "§ 1396a(a)(43) affords plaintiffs vindicable private

rights."); *Kenny A. v. Perdue*, 218 F.R.D. 277, 293-94 (N.D. Ga. 2003) (holding that, *inter alia*,

§ 1396a(a)(43) confers privately enforceable rights); *Hunter ex rel. Lynah v. Medows*, No. 1:08-

CV-2930, 2009 WL 5062451, at *2-3 (N.D. Ga. Dec. 16, 2009) (holding that § 1396a(a)(43)

"satisf[ies] the three-factor test . . . in *Blessing* and *Gonzaga*."); *Memisovski v. Maram*, No. 92-

C-1982, 2004 WL 1878332, at *10-11 (N.D. Ill. Aug. 23, 2004) (concluding that "the EPSDT

provisions[ of § 1396a(a)(43)] also confer individual rights on plaintiffs which may be enforced

pursuant to 42 U.S.C. § 1983.").

 Given the above, this Court should reject defendants' argument that plaintiffs do not have

a private right of action under § 1983 to enforce § 1396a(a)(43) and its subsections.

## <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the Court deny defendants' motion

to dismiss or for judgment on the pleadings.


DATED: April 8, 2011

                                        Respectfully submitted,

JOHN M. DOWDY, JR.               THOMAS E. PEREZ
United States Attorney            Assistant Attorney General
Southern District of Mississippi     SAMUEL R. BAGENSTOS
                                     Principal Deputy Assistant Attorney General
                                     JOHN L. WODATCH
                                     Deputy Assistant Attorney General
                                     Civil Rights Division

                                     RENEE M. WOHLENHAUS, Acting Section Chief
                                     KATHLEEN WOLFE, Acting Special Legal Counsel

ALFRED B. JERNIGAN, Jr.      /s/ Anne S. Raish
Chief, Civil Division            ANNE S. RAISH
MS Bar. No. 3088               Trial Attorney
U.S. Attorney's Office          New York Bar No. 4070975
Southern District of Mississippi     Disability Rights Section
188 E. Capitol Street, Suite 500    Civil Rights Division
Jackson, MS  39201            U.S. Department of Justice
(601) 973-2820 direct          950 Pennsylvania Avenue, N.W. – NYA
(601) 965-4032 fax             Washington, DC 20530
(601) 672-5504 cell             Tel: (202) 305-1321
Al.Jernigan@usdoj.gov        Fax: (202) 307-1197
                                     Anne.Raish@usdoj.gov

                                     Counsel for the United States

## CERTIFICATE OF SERVICE

I, Anne S. Raish, certify that on April 8, 2011, using the ECF system, a copy of the foregoing

document was sent to the following:

      Roger Googe
      Harold Edward Pizzetta, III
      Mary Jo Woods
      Wilson D. Minor
      Office of The Attorney General
      Jackson, Mississippi
      rgoog@ ago.state.ms.us; hpizz@ago.state.ms.us; mwood@ago.state.ms.us;
      wmino@ago.state.ms.us

      *Counsel for the Defendants*

      Vanessa Carroll
      Sheila A. Bedi
      Southern Poverty Law Center
      Jackson, Mississippi
      vcarroll@splcenter.org; Sheila.a.bedi@gmail.com

      Robert B. McDuff
      Jackson, Mississippi
      RBM@McDuffLaw.com

      Ira Burnim
      The Bazelon Center for Mental Health Law
      Washington, DC
      irab@bazelon.org

      *Counsel for the Plaintiffs*

                                   /s/ *Anne Raish*

1