IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

J.B. and L.P., by and through their next friend,
MARY TROUPE; L.M., by and through his next friend,
TRASIE HOWARD; and L.S., by and through his
next friend, SHEILA DAVIS                                                    PLAINTIFFS

V.                                              CIVIL ACTION NO. 3:10-CV-153 HTW-LRA

GOVERNOR HALEY BARBOUR, in his official
capacity; ROBERT L. ROBINSON, in his official
capacity as Director of the Mississippi Division
of Medicaid; PATRICIA AINSWORTH, in her
official capacity as chair of the Mississippi Board
of Mental Health; and EDWIN C. LEGRAND, in his
official capacity as Executive Director of the
Mississippi Department of Mental Health                                      DEFENDANTS

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### REGARDING OLIVIA Y. PLAINTIFFS' MOTION TO INTERVENE

A class of plaintiffs from civil case no. 3:04-cv-251-TSL-FKB (hereinafter, "*Olivia Y.* plaintiffs"), have moved for an intervention of right pursuant to Fed.R.Civ.P. 24(a)(2).[1]

In the alternative, they move for permissive intervention under Fed.R.Civ.P. 24(b).[2]

They claim that intervention is appropriate because the instant lawsuit and a case they

---

[1] Fed.R.Civ.P. 24(a)(2) states:
(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:
. . .
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

[2] Fed.R.Civ.P. 24(b) states:
(b) PERMISSIVE INTERVENTION.
(1) *In General.* On timely motion, the court may permit anyone to intervene who:
(A) is given a conditional right to intervene by a federal statute; or
(B) has a claim or defense that shares with the main action a common question of law or fact.

settled in January of 2008 both involve the issue of provision of mental health services for children in Mississippi's foster care system.

    The plaintiffs in this case are Medicaid-eligible children under twenty-one years of age, with behavioral and emotional disorders. Under Title XIX of the Social Security Act, Medicaid-eligible children are entitled to receive Early and Periodic Screening, Diagnostic, and Treatment Services ("EPSDT"). See Title 42 U.S.C. § 1396a(43)(C),[3] Title 42 U.S.C. § 1396d(a)(4)(B),[4] Title 42 U.S.C. § 1396d(r)(5).[5] The plaintiffs in the current lawsuit ask this court to declare that defendants have failed to comply with the mandates of the Medicaid Act, and other federal laws, by denying them necessary and federally-mandated intensive home and community-based mental health services.

    On March 30, 2004, the plaintiffs in *Olivia Y. v. Barbour,* Civil Action No. 3:04cv251LN (S.D. Miss), filed a lawsuit on behalf of all children who were, or would be, in the legal custody of the Division of Family and Children's Services. The lawsuit

---

[3] Title 42 U.S.C. § 1396a(43)(C) states:
(a) Contents
A State plan for medical assistance must–
   (43) provide for--
      (C) arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services, and

[4] Title 42 U.S.C. § 1396d(a)(4)(B) states "early and periodic screening, diagnostic, and treatment services (as defined in subsection (r) of this section) for individuals who are eligible under the plan and are under the age of 21;"

[5] Title 42 U.S.C. § 1396d(5)(5) states:
(r) Early and periodic screening, diagnostic, and treatment services
The term "early and periodic screening, diagnostic, and treatment services" means the following items and services:
   (5) Such other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan.

alleged that Mississippi's state officials were operating a constitutionally deficient child welfare system that placed children in Mississippi's foster care at a substantial risk of harm, in violation of their rights under federal law and the United States Constitution. Specifically, the complaint alleged that the Mississippi Department of Human Services ("DHS") and the Division of Family and Children's Services ("DFCS") cycled foster children through numerous unsuitable foster care placements or institutions where their medical, dental and psychological needs were left unmet and where they had little chance of finding a permanent family.

The court certified the class of children who were currently in the foster care system or who would enter foster care. Following the class certification, both parties engaged in years of discovery and litigation. The plaintiffs' counsel retained child welfare and foster care experts who conducted a thorough investigation and issued detailed reports on various aspects of the Mississippi foster care system, including the lack of mental health services available to foster children and the over institutionalization of foster children.

On January 4, 2008, the parties in *Olivia Y.* reached a settlement agreement, entitled Mississippi Settlement Agreement and Reform Plan ("Settlement" or "*Olivia Y.* Settlement"), which was entered by the court. The Settlement established standards and outcome measures that DFCS and DHS, as the children's legal custodians, had to meet within five years of the order. *Olivia Y.* plaintiffs' Brief in Support of its Motion to Intervene at 4.

Among other things, the *Olivia Y.* Settlement mandates that DFCS and DHS provide specific services to meet foster children's mental health needs. *Id* at 5. For

example, it requires the State to provide mental health assessments for children four years old and older.  Once assessed, children must receive all recommended mental health services.  *Id.*  It also mandates DFCS to place foster children in licensed placements that are the least restrictive setting that can meet their individual therapeutic, medical and educational needs.  *Id.*  Under the Settlement, children must receive all necessary therapeutic and rehabilitative foster care services.  In order to accomplish this, DFCS is required to develop plans to recruit and develop mental health and dental service providers.  *Id.*  The Settlement requires the parties to negotiate annual implementation plans, which are also enforceable, to ensure that DFCS and DHS meet interim benchmarks each year. *Id.*

## I. Legal Analysis

Federal Rule of Civil Procedure 24(a)(2) provides as follows:

> "Intervention of right.  On timely motion, the court must permit anyone to intervene who: claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

"Federal courts should allow intervention where no one would be hurt and the greater justice could be attained."  *Doe #1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001)(quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).  A party is entitled to intervene of right if it satisfies four key elements: 1) it files a timely motion to intervene; 2) the intervenor's interest is "related to the property or transaction that forms the basis of the controversy" in the target case; 3) "the disposition of the case may impair or impede the potential intervenor's ability to protect his/her interest; and 4) the

existing parties do not adequately represent the potential intervenor's interest." *Id* (internal citations omitted). All four elements must be satisfied for intervention of right. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). This rule balances the due process rights of a prospective intervenor with the existing litigants' rights to efficient and orderly disposition of their case. *Id*.

### A. Timeliness of Motion to Intervene

Timeliness of a motion to intervene is analyzed using four factors:

(1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)

The primary concern when evaluating a motion to intervene is the impact on, and any prejudice to, the original parties to the suit. *Id*.

Plaintiffs' complaint was filed on March 10, 2010. The *Olivia Y.* plaintiffs filed their motion to intervene on April 28, 2010. The defendants in this suit argue that the motion is untimely because the *Olivia Y.* plaintiffs have sought intervention prematurely, before a class has been certified.

This court finds the *Olivia Y.* plaintiffs' motion to be timely. It was filed as soon as they discovered they may have an interest in the underlying controversy, and before the start of discovery.

**B. Intervenor's Interest in the Subject Matter of the Instant Case**

In order to intervene, a party must have a "direct, substantial, [and] legally protectable" interest in the subject matter of the case. *Espy*, 18 F.3d at 1207. "This 'interest test' is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.*

The *Olivia Y.* plaintiffs argue that they have a judicially enforceable interest which is outlined in their consent decree with the State. The consent decree started in January of 2008 and runs for 5 years. It requires the State to provide specific medical and mental health assessments and services to foster children.

Plaintiffs in the instant litigation argue that the *Olivia Y.* plaintiffs have a legally protectable interest in their own settlement, but not the subject matter of this case. This case involves different defendants–the Mississippi Division of Medicaid and the Mississippi Board of Mental Health–as opposed to the state agencies subject to the *Olivia Y.* Settlement–the Department of Human Services ("DHS") and the Department of Children and Family Services ("DCFS"). Further, this suit involves distinct federal law–the Medicaid Act and the Americans with Disabilities Act. The *Olivia Y.* Settlement requires DHS and DCFS to provide certain levels of care to children in foster care.

This court finds, nevertheless, that the *Olivia Y.* plaintiffs have an interest in the subject matter of the lawsuit. They comprise a subset of the putative plaintiffs in the instant case, children in foster care, or at risk of entering foster care, who need mental and behavioral health care services. The subject matter of this lawsuit overlaps the interests secured by the *Olivia Y.* plaintiffs in the Settlement they have obtained from

the State.

### C. Impact of Disposition of Instant Case on Intervenor's Ability to Protect Her Interest

The third factor for deciding a motion to intervene requires the court to assess whether the prospective intervenor "is so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect his interest." *Espy*, 18 F.3d at 1207.

The *Olivia Y.* plaintffs argue that the *Troupe* case may impact the location and availability of mental health services for children. It could create overlapping and conflicting orders regarding the manner in which the State must provide these services. Docket 9, p. 14.  Without intervention, they say, there is a risk that the State will be ordered to provide services which are incompatible with its obligations to the *Olivia Y.* plaintiffs.

Although the rule does not require a prospective intervenor to show it will be bound by disposition of the current action, *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996), the Fifth Circuit has most frequently analyzed this factor by evaluating the effect of *stare decisis* on a prospective intervenor's rights.  *See Espy*, 18 F.3d at 1207; *see U.S. v. Tex. E. Transmission Corp.*, 923 F.2d 410 (5th Cir. 1991); *see Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324 (5th Cir. 1982).

The *Olivia Y.* plaintiffs' "interests" have already been secured by a judicially enforceable order.  The *Olivia Y.* plaintiffs' Settlement was negotiated by the parties, and has been approved by the district court.  The court has retained jurisdiction to enforce the agreement and appointed a monitor to oversee its implementation. An

adverse determination in this lawsuit does not threaten to lessen the State's obligations under that agreement.  The consent decree provides an enforcement mechanism for resolution of the States's failure to comply as follows:

> If Plaintiffs believe that Defendants have failed to comply with any obligation under this Plan or an annual implementation plan, Plaintiffs will, prior to seeking judicial action to enforce the terms of this Plan or an annual implementation plan, give written notice of non-compliance to the State. Within 30 calendar days of Plaintiffs' notice of noncompliance, Defendants shall submit a written response to Plaintiffs. Plaintiffs agree to work in good faith with the State to agree on necessary corrective actions and avoid enforcement action, and may not initiate court action for 60 days from the date of Plaintiffs' non-compliance notice. However, in case of an emergency posing an immediate threat to the health or safety of youths, Plaintiffs may omit the notice and cure requirements herein before seeking judicial action.

Should the State alter Medicaid services in a way which violates the Settlement, the *Olivia Y.* plaintiffs may enforce the Settlement through judicial action.

The *Olivia Y.* plaintiffs also argue that a potential settlement agreement reached by the parties in this suit might conflict with its existing consent decree.  The instant plaintiffs, in response, cite *U.S. v. Tex. E. Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 1991), stating that vague or speculative impact on the hopeful intervenors is insufficient to support intervention.  In *Tex. E. Transmission Corp.*, the Environmental Protection Agency ("EPA") brought suit against an interstate pipeline operator to cleanup hazardous waste which leaked from the operator's pipelines.  The EPA and pipeline company had negotiated a potential settlement, and the EPA filed a proposed consent decree with the complaint.  Several cleanup sites were located in Pennsylvania.

The State of Pennsylvania moved to intervene, citing an interest in protecting its environment and its citizens. The State argued that it had an interest in enforcing its State environmental laws, which potentially conflicted with or required more of the pipeline company than the consent decree negotiated by the EPA. The consent decree and its complex remedies, claimed Pennsylvania, might lead to a judicial determination that the company did not also have to comply with Pennsylvania's State environmental laws.

The Fifth Circuit affirmed a denial of the motion to intervene. The Court stated, "[s]uch a theoretical possibility cannot constitute the requisite practical impairment in this case under the circuit's emphasis on a practical reading." *Id*.

The interests of the plaintiffs and the *Olivia Y.* plaintiffs in this case are compatible. The Settlement states:

> Each child four years old and older shall be provided with a mental health assessment by a qualified professional within 30 calendar days of foster care placement. Each foster child who reaches the age of four in care shall be provided with a mental health assessment within 30 calendar days of his/her fourth birthday. Each foster child shall receive recommended mental health services pursuant to his/her assessment. Settlement at 26.

The plaintiffs in the instant litigation specifically seek an injunction to ensure greater availability of mental and behavioral health services in a home or community setting. The plaintiffs also include in their complaint an assertion that the State is not meeting its federally mandated obligation to provide adequate therapeutic foster care. The *Troupe* putative class is broader than the class of *Olivia Y.* plaintiffs, including all Medicaid eligible children regardless of whether they are in foster care. But the demands of the *Troupe* complaint are wholly consistent with the Consent Decree with

9

Case 3:10-cv-00153-HTW-LRA   Document 47   Filed 09/30/11   Page 10 of 12

respect to mental and behavioral health.

The *Olivia Y.* plaintiffs have pointed out that existing members of the putative class may intervene. *See Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324 (5th Cir. 1982). A subclass which meets the requirements for intervention may intervene, but in *Woolen*, the subclass had filed its own separate lawsuit asserting a claim for a different remedy than the larger class. The larger class in *Woolen* sought declaratory and injunctive relief, as well as damages, while the subclass was suing for damages. The subclass argued that the larger class had "abandoned any interest in the damage claims." 684 F.2d at 333. Because of a lack of findings of fact by the district court, the Fifth Circuit remanded the case for reconsideration of its denial of the subclass's motion to intervene. The Fifth Circuit noted the potential problems raised by two groups of plaintiffs seeking different remedies. Id at 333-334.

No such problem exists in this case. The instant putative class's objectives are consistent with those of the *Olivia Y*. plaintiffs. Further, the *Olivia Y*. plaintiffs have already secured a remedy through their settlement agreement.

This court finds that the *Olivia Y.* plaintiffs have failed to satisfy this element of the test for intervention.

### D. Are Intervenor's Interests Adequately Represented?

The prospective intervenor bears the burden of establishing the inadequacy of representation. *Edwards v. Houston*, 78 F.3d 983, 1005 (5th Cir. 1996). The necessary showing is minimal, but "it cannot be treated as so minimal as to write the requirement completely out of the rule." *Id*. Representation is presumed to be adequate "when the

would-be intervenor has the same ultimate objective as the party to the lawsuit.  *Id.*  In order to overcome this presumption, the prospective intervenor "must show adversity of interest, collusion, or non-feasance on the part of the existing party.  *Id.*

As mentioned above, the *Olivia Y.* plaintiffs have the same ultimate objective as the *Troupe* putative class.  The prospective intervenors have alleged neither non-feasance nor collusion by the instant plaintiffs.  This court finds that the *Olivia Y.* plaintiffs have provided insufficient arguments to overcome the presumption of adequate representation.

The *Troupe* plaintiffs are represented by attorneys with a wealth of experience and a strong national reputation for prosecuting cases of this type, namely the Mississippi Youth Justice Project ("MYJP"), which is affiliated with the Southern Poverty Law Center; the Bazelon Center for Mental Health Law; and Attorney Robert McDuff.  The MYJP has prosecuted multiple class actions in Mississippi pursuing reform of the Mississippi juvenile justice system.  See *Disability Rights Mississippi v. Lauderdale County*, No. 4:09cv137 TSL-LRA (S.D. Miss. 2009); *D.W., ex rel. Devonsha Fairley v. Harrison County*, No. 1:09-cv-267 LG-RHN (S.D. Miss 2009); J.A. v. Barbour, No. 3:07-cv-394 DPJ-FKB; *Morgan v. Sproat*, 432 F.Supp 1130 (S.D. Miss. 1977).  The Bazelon Center for Mental Health Law and its Legal Director, Ira Burnim, have litigated extensively in the area of mental health and child welfare.  Attorney Robert McDuff has 28 years of experience in civil rights litigation.

Finally, the *Olivia Y.* plaintiffs argue that because the putative class in this case is broader than a class of foster children, it must represent diverse interests of this

11

broad class, and cannot adequately represent the interests of foster children.

This argument fails because the claims in the present case specifically focus on Medicaid-eligible children's rights to receive necessary home and community based mental health services.  This is a focused pursuit, which could inure to the benefit of foster children needing these services.

## II.  Conclusion

Both plaintiffs and defendants in this lawsuit oppose intervention by the *Olivia Y.* plaintiffs.  They have pointed to the duplicative effort that would be involved and the increased complexity which will create unnecessary delays and increase the costs of litigation.   At oral arguments, the plaintiffs' attorneys said they are familiar with the *Olivia Y.* plaintiffs' attorneys and are more than willing to keep them apprised of the progress and developments in the litigation or possible movement toward settlement.  The *Olivia Y.* plaintiffs are not entitled to intervention of right, and based on the arguments and concerns presented by both the plaintiffs and defendants in this case, this court finds, too, that the *Olivia Y.* plaintiffs should not be allowed permissive intervention.  Accordingly, this court denies the *Olivia Y.* plaintiffs' motion to intervene [docket # 8].

SO ORDERED, this the 30th day of September, 2011.

                                      s/ HENRY T. WINGATE
                                      UNITED STATES DISTRICT JUDGE

CIVIL ACTION NO. 3:10-CV-153 HTW-LRA
Findings of Fact and Conclusions of Law