# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# JACKSON DIVISION

| | |
|---|---|
| J.B., L.P., L.M., and L.S., by and through their next friends, | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>)<br>) |
| v. | ) CASE NO. 3:10-CV-153-HTW-MTP<br>)<br>) |
| GOVERNOR PHIL BRYANT, *et al.*, | )<br>)<br>) |
| Defendants. | )<br>) |

## PARTIAL OBJECTION TO THE REPORT AND RECOMMENDATION

Plaintiffs J.B., L.P., L.M., and L.S., by and through counsel, hereby submit their partial objection to Section III.B. of the Magistrate Judge's Report and Recommendation ("R&R"), Docket No. 55, recommending dismissal of Count One of the Complaint for Plaintiffs' failure to request a screening under 42 U.S.C. § 1396a(a)(43)(B) ("Subsection 43(B)").[1] This Court should overrule Section III.B. of the R&R or, in the alternative, remand it to the Magistrate Judge for further findings, because: 1) shifting the burden to Plaintiffs to request a screening under Subsection 43(B) runs contrary to Congressional intent and federal guidance; and 2) even if a screening were a prerequisite to pleading a violation of 42 U.S.C. § 1396a(a)(43)(C) ("Subsection 43(C)"), the Complaint alleges facts that lead to a reasonable inference that Plaintiffs in fact received a screening.

---

[1] Plaintiffs do not object to—and urge the Court to adopt—the remainder of Judge Parker's R&R.

Since the R&R concerns a motion to dismiss under Rule 12(b)(6), the Court must view facts in the Complaint in the light most favorable to the Plaintiffs and draw all reasonable inferences in the Plaintiffs' favor. *See Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 371-372 (5th Cir. 2008) (*citing Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). The Complaint must be liberally construed. *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005) (internal citation omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

I. **A formal request for screening under Subsection 43(B) is not a prerequisite for alleging a violation of Subsection 43(C).**

The EPSDT program is a mandatory set of health benefits and services for children under 21 enrolled in Medicaid. Since 1967, the purpose of the EPSDT program has been "to discover, as early as possible, the ills that handicap our children" and to provide "continuing follow up and treatment so that handicaps do not go neglected." Lyndon B. Johnson, President of the United States, Special Message to Congress (Feb. 8, 1967). 42 U.S.C. § 1396a(a)(43) requires that a state plan for medical assistance must provide for (A) "informing all [eligible] persons . . . of the availability of [EPSDT] services," (B) "providing . . . such screening services in all cases where they are requested," and (C) "arranging for . . . corrective treatment[.]"

Magistrate Judge Parker recommended dismissal of Count One, reasoning that "if Plaintiffs never requested and received a screening under Subsection (43)(B), then Subsection (43)(C) imposes no requirement on the Defendants."[2] *See* R&R at 9. But there is no requirement

---

[2] As demonstrated in Section II, *infra*, each Plaintiff *has* received a screen, because screens are *required* by the state for all children entering state custody, and because the assessments required before a child receives publicly financed mental health services both include and constitute a screen.

that plaintiffs formally request a screening before bringing a suit for violation of Subsection 43(C). The federal agencies responsible for administering Medicaid have repeatedly made clear that the statute's screening request language must be construed to ensure that children receive the screenings and services they need to treat identified health problems. Moreover, courts have held that children are not required to request screens in order to receive them because such a requirement would directly impede EPSDT's preventative intent. In short, the screening requirement under Subsection 43(B) is not designed to be, and should not be used as, a procedural bar to Medicaid-eligible children from receiving necessary care.

In administering the Medicaid program, the U.S. Department of Health and Human Services ("HHS") issues interpretive directives clarifying the conditions under which states accept Medicaid funds. HHS has repeatedly emphasized that Congress's preventative intent for the EPSDT program requires states to actively seek out and screen children who may need corrective treatment. "Under federal EPSDT rules, States must provide for periodic [physical and mental health] screens," the "goal" of which is to "assure that all children receive preventive care so that health problems are diagnosed as early as possible, before the problems become complex and treatment more difficult and costly." Guidance Letter to State Medicaid Directors from Dept. of Health & Human Servs., Health Care Financing Admin., Ctr. for Medicaid & State Operations at 10 (Jan. 10, 2001) (Ex. A, "Guidance Letter to State Medical Directors"); *see also* U.S. Dept. of Health & Human Servs., Ctrs. for Medicare & Medicaid Servs., Pub. No. 45, State Medicaid Manual § 5010.B (stating that the EPSDT law's fundamental purpose is "[a]ssur[ing] that health problems found are diagnosed and treated early, before they become more complex and their treatment more costly.") (Ex. B, "State Medicaid Manual").

This Medicaid requirement that States actively seek out and screen children has existed for decades, and by accepting Medicaid funding, Mississippi has accepted the affirmative obligation to screen its Medicaid-eligible children, whether or not they have requested it. In 1991, the Director of the Office of Medicaid Management advised that "[c]learly, Congress anticipated that children with already existing health problems would have available *diagnostic* and treatment services appropriate to their needs. To view this legislation otherwise[] is contrary to the preventative thrust of the program and the concept historically embodied in the EPSDT program to *diagnose* and treat health problems early before they worsen and become more costly." Memorandum from the Dir. of the Office of Medicaid Mgmt. to the Associate Reg'l Adm'r for the Philadelphia Div. of Medicaid at 2 (May 15, 1991) (Ex. C, "Office of Medicaid Management Guidance Memorandum") (emphases added). In the face of such clear guidance, the State cannot rely on the notion that a child must make a request before the State has any obligation to screen or provide necessary services.

Courts have likewise held that children are not required to request screens in order to receive them, because such a requirement would directly impede EPSDT's preventative intent. The Seventh Circuit has explicitly held that states may <u>not</u> use the language in the statute requiring "screening services in all cases where they are requested" defensively to skirt the duty to inform, screen, and assure the provision of corrective EPSDT services. In *Stanton v. Bond*, Indiana attempted to do so, asserting that eligible children could avail themselves of EPSDT services "merely by requesting them from their local health provider." *Stanton v. Bond*, 504 F.2d 1246, 1250-51 (7th Cir. 1974). The Seventh Circuit, however, ruled that "Indiana's somewhat casual approach to EPSDT hardly conforms to the aggressive search for early detection of child health problems envisaged by Congress." *Id.* at 1250. In affirming the injunctive relief sought by

4

the plaintiff children, the Seventh Circuit explicitly found "it [] utterly beyond belief" to expect or require the plaintiffs to present themselves for screening or make a formal request for services when the services available to them under Indiana's Medicaid program were inadequate. *Id.*

*Rosie D. v. Romney,* 410 F. Supp. 2d 18 (D. Mass. 2006), is to the same effect. The District Court ruled that the EPSDT statute requires that states provide clinical screening for Medicaid-eligible children without the child first requesting such screening. In *Rosie D.*, the Court found Massachusetts' approach to screening "deficient" because "no feature of the Commonwealth's Medicaid system assures that SED [seriously emotionally disabled] children will necessarily receive these pediatric assessments . . .[, so] thousands of SED children in Massachusetts get no comprehensive assessments at all." *Id.* at 34.

As the above demonstrates, accepting Medicaid funding imposes an affirmative obligation on the state to screen Medicaid-eligible children, whether or not these children or their caregivers approach the state to request a screen.[3]

## II. Plaintiffs and the Plaintiff Class have already received a screening, but have not received medically necessary services, as required by 42 U.S.C. § 1396a(a)(43)(C).

Under the EPSDT program, states are required to provide periodic and interperiodic screenings for Medicaid-eligible children under the age of 21. State Medicaid Manual, § 5123.1. States are required to provide periodic screenings on a schedule established by the State. In Mississippi, such periodic screens are to take place annually between the ages of two and 21.

---

[3] Likewise, the Eastern District of Texas found in *Frew v. Gilbert* that a "request" defense could not be used "to avoid the duty to provide services where no services have been requested." 109 F. Supp. 2d 579, 609-610 (E.D. Tex. 2000) (reviewing legislative history of predecessor EPSDT statute and holding that statute should not be read to impose additional barrier to children's receipt of needed services). In *Frew*, the district court found that imposing a "request" requirement by a literal reading of the statute would "produce a result demonstrably at odds with the intentions of its drafters." *Frew,* at 610 (internal citations and quotations omitted). While the Fifth Circuit criticized elements of the District Court's "request defense" analysis, the Fifth Circuit's opinion was rejected outright by the U.S. Supreme Court. *Frazar v. Gilbert,* 300 F.3d 530 (5th Cir. 2002), *overruled by Frew v. Hawkins*, 540 U.S. 431 (2004).

5

Miss. Dept. of Medicaid Admin. Code, Tit. 23, Chap. 1, Rule 1.4; *see also* Miss. Code Ann. §§ 43-13-121, 43-13-117(5); 42 C.F.R § 441.58 (granting the Mississippi Department of Medicaid the authority to set the periodicity schedule for screening services). States must also provide medically necessary interperiodic screens—screens that occur in addition to annual periodic screens—to determine the existence of suspected physical or mental illnesses or conditions. *See* State Medicaid Manual, § 5140.B. The determination of whether a child should receive an interperiodic screen "may be made by a health, developmental or educational professional who comes into contact with the child outside of the formal health care system." *Id.*

Moreover, states are required to treat certain events as constituting an interperiodic screen, regardless of the understanding of the professionals involved. As HHS has made clear, *any* contact by a Medicaid-eligible child with the health care system constitutes an interperiodic screen under EPSDT:

> [I]n order for a child's health problems to be known, the child had to have received screening services at some point in time. . . [W]e consider any encounter with a health care professional practicing within the scope of practice as an interperiodic screen. As such, it does not matter whether the child receives the screening services while Medicaid eligible, nor whether the provider is participating in the Medicaid program at the time those screening services are furnished.

Office of Medicaid Management Guidance Memorandum at 2; Guidance Letter to State Medicaid Directors at 11 ("Please note that we have long considered any encounter with a health care professional practicing within the scope of his/her practice inter-periodic screening.") When an "inter-periodic screening reveals the existence of a problem, EPSDT requires that Medicaid-eligible children receive coverage of all services necessary to diagnose, treat and ameliorate defects identified by an EPSDT screen[.]" Guidance Letter to State Medicaid Directors at 10-11.

Accordingly, as Medicaid-eligible children, each named Plaintiff and member of the Plaintiff class should be receiving annual screenings, according to the rules of Mississippi's Medicaid program.[4] More importantly, each named Plaintiff and each member of the class has already received an EPSDT screen, according to HHS, which administers the Medicaid program. Each named Plaintiff has been seen by one or more mental health professionals, including at treatment facilities at which they were institutionalized,[5] who have identified the child as having a mental health condition. Such an identification by a mental health professional constitutes a screen (an "interperiodic" screen), according to HHS, and triggers the obligation to provide "all services necessary to diagnose, treat and ameliorate" the condition. Guidance Letter to State Medicaid Directors at 10-11.[6] The Plaintiff class consists of "Medicaid-eligible children under the age of twenty-one who have a behavioral or emotional disorder and who need intensive home- and community-based mental health services." Compl. ¶ 17. These children's mental health conditions have been identified by mental health professionals, an event that, according to longstanding HHS interpretive guidance, constitutes an EPSDT screen. *See* Office of Medicaid Management Guidance Memorandum at 2; Guidance Letter to State Medicaid Directors at 11. Stated differently, the definition of the class members presupposes that the child must already

---

[4] For children who come into state custody, Mississippi requires that they receive a mental health screen without regard to whether the children or their custodians request one. The Mississippi Department of Human Services Division of Family and Children's Services policy requires "a mental health assessment within 30 days of a child coming into state custody with appropriate referrals being made as needed for services." Miss. Child & Family Servs. Rev. Statewide Assessment 2010, at 118, *available at* http://www.mdhs.state.ms.us/pdfs/fcs_cfspreview.pdf (citing DFCS Policy, Vol. IV. Sec. D., 3350-3352-A.) Also according to the State, the DFCS Policy provides that "each child shall receive follow-up mental health services provided as recommended in the mental health assessment." *Id*. at 93.

[5] As acknowledged by Defendants' counsel, all of the Plaintiffs "were given comprehensive assessment[s]" while institutionalized. Transcript of Oral Argument at 70 (August 19, 2011) (Ex. D).

[6] *See* State Medicaid Manual, *supra* at 3, § 5122.E. (states are required to provide necessary health care for physical and mental illnesses and conditions discovered by screening services); § 5124.B.1. ("You must make available health care, treatment or other measures to correct or ameliorate defects and physical and mental illnesses or conditions discovered by the screening services."). *See also* Pls.' Opp. to Defs.' Motion to Dismiss or for Judgment on the Pleadings at 12-13 (Jun. 22, 2010, Dkt. 24).

have been screened. The child must have come into contact with health care professionals to be identified as having a behavioral or emotional disorder.

Accordingly, any Medicaid-eligible child in Mississippi should have received periodic screenings. Moreover, any child in the prospective class, defined as "a statewide class of Medicaid-eligible children under the age of twenty-one who have a behavioral or emotional disorder and who need intensive home- and community-based mental health services," (Compl. ¶ 17), must have been screened.

Plaintiffs have spent extensive time in the State's custody and in institutions for children with behavioral or emotional disorders. All of the Plaintiffs have been in the State's custody or care for extended periods of time; indeed, Plaintiff J.B. had been in State custody almost his whole life. Compl. ¶¶ 42-48. Three of the four Plaintiffs spent extensive time in State custody at a State psychiatric residential treatment facility; two Plaintiffs were institutionalized there at the time the Complaint was filed. Compl. ¶¶ 44-45, 53, 57.

In order to receive the mental health services they did (deficient as they were), each of the named Plaintiffs was identified by a mental health professional as having a mental health condition (which, as indicated above, is the definition of being "screened") and additionally was diagnosed as having a mental health condition (so the "diagnosis" stage of EPSDT was already reached), as a result of which the children received services. Each was "screened" and then diagnosed and then all too frequently sent to an institutional facility. This case concerns the sufficiency of the treatment received by the named Plaintiffs and class members—after being screened and diagnosed—and whether that treatment satisfied the requirements of the Medicaid Act and the Americans with Disabilities Act. Plaintiffs claim it did not.

Thus, even if the Court were to conclude that receiving a request for a screening is a necessary prerequisite to a challenge to the State's treatment failures, the State, by its own policies, should have provided (and did in fact provide) a screening to Plaintiffs and any other Medicaid-eligible children who have come into contact with professionals for evaluation or treatment of their behavioral or emotional disorder, whether those children "requested" a screening or not.[7] Even if the State had not already provided a screening, the State should not be permitted, by violating its own screening policies, to avoid inquiry into the lawfulness of the treatment it provides to the named Plaintiffs and the class.[8]

## CONCLUSION

Magistrate Judge Parker erred in interpreting the EPSDT statute to require Plaintiffs to request a screening before challenging the State's provision (or lack thereof) of intensive home- and community-based mental health services. Such statutory interpretation runs counter to the intent of the statute and the guidance from the federal agencies responsible for administering Medicaid. Even if the EPSDT statute required a request for a screening, however, Plaintiffs have adequately pleaded facts in the Complaint indicating that they and all other members of the

---

[7] While Plaintiffs did not have a duty to make a request for services as a result of the State's obligation to do so on their behalf, the Southern Poverty Law Center also requested services on their behalf in 2009 by sending a letter to the Mississippi Office of the Attorney General requesting a plan to develop a statewide, community-based system of care on behalf of thousands of children and families struggling to access appropriate mental health services across Mississippi. *See* Letter from Vanessa Carroll & Sheila Bedi to Harold Pizzetta (Oct. 16, 2009) (Ex. E).

[8] Finally, Plaintiffs do not concede either that the screenings provided by the State or that the services provided are sufficient under the EPSDT provisions of the Medicaid Act. As Plaintiffs have repeatedly alleged, Plaintiffs have been institutionalized and/or have been at risk of being re-institutionalized because Mississippi's "mental health system fails to provide medically necessary home- and community-based mental health services." Compl. ¶ 2. Clinicians are unable to realistically prescribe intensive home- and community-based services and Plaintiffs have no hope of obtaining such services even upon request because such services are not listed on the State's Medicaid Plan and are not available through the State's community mental health centers. Compl. ¶¶ 3, 29, 38, 39, 41, 48, 50, 57, 61). Further, as detailed in the Complaint, the State failed to make what limited required services it does have available to Plaintiffs when needed. For example, the State placed Plaintiff L.S. into residential treatment three times without offering L.S. a choice between intensive home-and community-based services through MYPAC or segregated residential care. Compl. ¶ 60. *See also* Statement of Interest of the United States of America, 10 (Apr. 8, 2011, Dkt. 41) ("[P]laintiffs' complaint demonstrates their concrete and particularized injury – the unavailability of statutorily mandated services – that is caused by defendants' failure to ensure that these services are available."). To the extent that the State has asserted that it does or it can provide services under Subsection 43(C), those arguments are issues of fact that must await discovery and are not appropriate for adjudication at this juncture.

proposed class have already been screened. Accordingly, Plaintiffs respectfully request that the Court overrule Section III.B. of the R&R recommending dismissal of Count One of the Complaint or, in the alternative, remand to Magistrate Judge Parker for further consideration. If, however, the Court adopts Section III.B. of the R&R and dismisses Count One, Plaintiffs request that the dismissal be without prejudice and with leave to amend the Complaint[9] consistent with the particular aspects of the R&R that the Court adopts.

Respectfully submitted, this 6th day of September, 2012.

/s/ Ona T. Wang
Ona T. Wang, N.Y. Bar No. 2987949*
Naima Garvin, N.Y. Bar No. 4460879**
Juvaria Khan, N.Y. Bar No. 5027461**
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201
*pro hac vice
**Application for admission *pro hac vice* to be filed

Jody E. Owens, II Miss. Bar No. 102333
Andrew Canter, Miss. Bar No. 102906
Southern Poverty Law Center
111 E. Capitol Street, Suite 280
Jackson, MS 39201
Tel: (601) 948-8882
Fax: (601) 948-8885

---

[9] *See Tuma v. Jackson Mun. Airport Authority*, 2012 WL 1229133, at *2 (S.D. Miss. Apr. 10, 2012) ("Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.") (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000)).

Ira Burnim, D.C. Bar No. 406145*
The Bazelon Center for Mental Health Law
1101 15th Street, NW, Suite 1212
Tel: (202) 467-5730
Fax: (202) 223-0409
*pro hac vice

Robert B. McDuff, Miss. Bar No. 2532
767 North Congress Street
Jackson, Mississippi 39202
Tel: (601) 969-0802
Fax: (601) 969-0804

# CERTIFICATE OF SERVICE

I, Ona T. Wang, Attorney for Plaintiffs, hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties who have appeared in this case.

This 6th day of September, 2013.

/s/ Ona T. Wang
Ona T. Wang, N.Y. Bar No. 2987949*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201
*pro hac vice