IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MARY TROUPE, ET AL.     PLAINTIFFS

v.     CIVIL ACTION NO. 3:10-cv-153-HTW-MTP

HALEY BARBOUR, ET AL.     DEFENDANTS

## ORDER

THIS MATTER is before the Court on the Motion to Intervene and to Vacate Protective Order [71] filed by Gannett River States Publishing Corporation d/b/a The Clarion Ledger ("The Clarion Ledger"). Having considered the Motion [71], record, and applicable law, the Court finds that the Motion [71] should be granted in part and denied in part.

## BACKGROUND

Plaintiffs filed this class action lawsuit on March 10, 2010, alleging that the State of Mississippi failed to provide intensive home-and-community-based services for children with mental health needs. (Complaint [1].) On April 8, 2011, the Department of Justice ("DOJ") filed a Statement of Interest of the United States pursuant to 28 U.S.C. § 517 in support of Plaintiffs' claims. (Statement of Interest [41].) In a letter dated December 22, 2011, the DOJ informed the State that "if the State declines to enter into voluntary compliance negotiations . . . the United States may then need to take appropriate action, including initiating a lawsuit." (Letter [48-1] at 33.) On August 29, 2014, the DOJ and the State reached an agreement ("Agreement"), which addressed remedial measures the State would implement to assess and address the DOJ's concerns and Plaintiffs' claims. (Agreement [71-2].)

As part of the Agreement, the State retained the Technical Assistance Collaborative

1

("TAC") to provide (1) assessments of permanent supportive housing for the mentally handicapped and (2) assessments of the State's existing mental health services. ([71-2].) The State's existing mental health services are at issue in this action, and therefore, will be referred to herein as the "*Troupe* Issues." The TAC Report on the *Troupe* Issues was completed in March, 2015.[1] On March 23, 2015, The Clarion Ledger requested that the Mississippi Department of Mental Health ("MDMH") produce the TAC Report. (Clarion Ledger Request [71-5].) On March 26, 2015, MDMH denied the request. (MDMH Denial [71-6].)

On April 24, 2015, the State filed an unopposed Motion for Protective Order [68] in this action, requesting that the Court enter an order protecting the confidentiality of the TAC Report. The State desired to provide Plaintiffs the TAC Report to facilitate settlement discussions. However, before the State released the report to Plaintiffs, it moved for an order prohibiting the release of the report to anyone who is not a party, counsel, or expert participating in the confidential settlement negotiations. *See* Motion [68]. The State argued that the TAC Report was created for purposes of negotiation and should be protected as confidential pursuant to Local Uniform Civil Rule 83.7. *Id.* On May 6, 2015, the Court granted the Motion for Protective Order [68]. *See* Protective Order [70]. On June 24, 2015, The Clarion Ledger filed its Motion to Intervene and to Vacate Protective Order [71].[2]

---

[1] TAC completed its report on permanent supportive housing for the mentally handicapped in October, 2015, and made it available to the public.

[2] On April 6, 2015, The Clarion Ledger filed a complaint in the Chancery Court of Hinds County to compel MDMH to release the TAC Report. That action is apparently still pending.

**ANALYSIS**

**Motion to Intervene**

In order to intervene under Federal Rule of Civil Procedure 24(a)(2), The Clarion Ledger must demonstrate that each of the following requirements are met:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Taylor Communications Group, Inc. v. Southwestern Bell Tel. Co.*, 172 F.3d 385, 387 (5th Cir. 1999). Regarding timeliness, The Clarion Ledger filed its Motion [71] less than two months after the Court entered the Protective Order [70]. The parties do not argue that The Clarion Ledger's Motion is untimely, and there is no apparent prejudice to the parties related to the timing of the instant Motion. Additionally, that the motion to intervene was "filed prior to entry of judgment favors timeliness, as most of our law rejecting petitions for intervention as untimely concern motions filed after judgment was entered in the litigation." *Edwards v. City of Houston*, 78 F.3d 983, 1001 (5th Cir. 1996).

The Clarion Ledger must also have an interest relating to the property or transaction which is the subject of the action. "The Fifth Circuit has held that a news agency has a legal interest in challenging a confidentiality order." *State Farm Fire and Cas. Co. v. Hood*, 266 F.R.D. 135, 141 (S.D. Miss. 2010) (citing *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001)). The third requirement is that The Clarion Ledger must be so situated that the disposition of this action may impair its ability to protect its interest. The Protective Order [70] conflicts with the right of public access; therefore, this requirement is met. *Id*. at 143.

3

The final requirement for intervention is that The Clarion Ledger's interest must be inadequately represented by the existing parties to the suit. As the Fifth Circuit found in *Ford*, "[t]he original parties in this case jointly moved for the confidentiality order, advocating a position contrary to the interest of [the party seeking to intervene]." *Ford*, 242 F.3d at 241. Thus, this requirement is also met. The Court finds that all of the requirements to intervene under Fed. R. Civ. P. 24(a)(2) are met and The Clarion Ledger's Motion [71] should be granted to the extent it seeks to intervene for the limited purpose of challenging the Protective Order [70].

**Motion to Vacate Protective Order**

Having granted The Clarion Ledger permission to intervene in order to challenge the Protective Order [70], the Court must determine whether the Protective Order [70] should be vacated or modified. The Clarion Ledger asserts that the TAC Report fits within the definition of "public records" found in Mississippi's Public Records Act, and the Protective Order [70] is an impediment to The Clarion Ledger acquiring the public record. According to The Clarion Ledger, "the protective order at least frustrates Mississippi's Public Records Act, if it does not render the Public Records Act useless." (Brief [72] at 8.)

The Public Records Act places a duty on public entities to provide public access to public records. *See* Miss. Code. Ann § 25-61-2. However, legislatively-created exceptions to the Public Records Act include a provision exempting records privileged by law:

> The provisions of this chapter shall not be construed to conflict with, amend, repeal or supersede any constitutional or statutory law or decision of a court of this state or the United States which at the time of this chapter is effective or thereafter specifically declares a public record to be confidential or privileged, or provides that a public record shall be exempt for the provisions of this chapter.

4

Miss. Code Ann. § 25-61-11.

Pursuant to the Public Records Act, a confidentiality order may affect a document's accessibility. Thus, the Court will examine the propriety of the Protective Order, which states,

> Statements made, and documents generated or exchanged by one of the parties to the negotiations or the Technical Assistance Collaborative ("TAC") in the course of the settlement negotiations, including, but not limited to, the March 2015 TAC Mississippi Children's Behavioral Health Needs Assessment, shall not be disclosed by any of the parties to the negotiations to anyone who is not a party, counsel, or an expert participating in the confidential settlement negotiations, unless the parties to the negotiations expressly agree otherwise in writing . . . .

*See* Protective Order [70].

Local Uniform Civil Rule 83.7(j) dictates that communications, information, and data related to a mediation or settlement conference are confidential and not subject to disclosure. The Clarion Ledger argues that the TAC Report was not prepared for this action and is not a part of the settlement negotiations in this action. It further asserts that the TAC Report was prepared pursuant to the agreement between the State and DOJ, resulting from the DOJ's separate and independent investigation of the State's services. A review of the Agreement, however, reveals that its purpose is twofold–to assist in negotiations between the State and the DOJ and to assist in negotiations between the State and *Troupe* Plaintiffs.

The Agreement states, "[t]he State and the United States will include counsel for the *Troupe* plaintiffs in negotiations and attempt to resolve the *Troupe* claims within the agreement." ([71-2] at 4.) The Agreement further states, "[t]he [TAC] consultant will assist the parties during settlement discussions by assessing the State's existing service array, quality, and availability, and make recommendations for necessary improvements in order to address the issue in the *Troupe* litigation." *Id*. at 5. In the Agreement, the State provided a framework for moving

forward in negotiations with the DOJ and *Troupe* Plaintiffs by setting specific goals and creating a process for resolving issues. The TAC Report was created for the purpose of addressing the issues presented in this action and assisting in the negotiations between the State and *Troupe* Plaintiffs.[3] Thus, the TAC Report is eligible for protection as a confidential document, and the Court previously entered a confidentiality order which covers the TAC Report.

Nevertheless, "[i]t is well established that a district court retains the power to modify or lift confidentiality orders that it has entered." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 784 (3rd Cir. 1994).[4] "The party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order." *Id*. at 790. The Court must weigh the need for confidentiality of settlement related documents against the public's right of access.

In determining the weight of the public's interest in the TAC Report, the Court considered the fact that this action involves public entities such as the Mississippi Department of Mental Health and the fact that the TAC Report involves matters of legitimate public concern. These facts support The Clarion Ledger's request to vacate the Protective Order. *See Id*. at 788 ("If a settlement agreement involves issues or parties of a public nature, and involves matters of

---

[3] Furthermore, The Clarion Ledger's argument that the TAC Report is not a part of the settlement negotiations in this action is unpersuasive considering the DOJ's extensive involvement in this action. *See*, *e.g.*, Statement of Interest [41]; October 19, 2011, Minute Entry; Statement of Interest [57].

[4] The Clarion Ledger also points out that, pursuant to the Local Rules, the disclosure of confidential information is allowed under certain circumstances, including to prevent manifest injustice or when required by law. *See* L.U. Civ. R. 83.7(j)(2) & (4)(A).

6

legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality.")

The TAC Report, however, was created and exchanged for purposes of settlement negotiations. This fact diminishes the public's interest in the report. *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 857 (2d Cir. 1998); *Landco Equity Partners, LLC v. City of Colorado Springs*, 259 F.R.D. 510, 513-14 (D. Colo. 2009) (finding that the "public's interest in monitoring the government through use of settlement negotiation information is negligible, and a presumption of public access to settlement negotiation information in this case is practically nonexistent.")

Balanced against the public's interest in access to the TAC Report is the interest in the confidentiality of settlement related documents. "Public policy requires the courts to encourage the voluntary settlement of civil controversies." *Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26, 45 (D. Md. 1974). "There is no question that fostering settlement is an important Article III function of the federal district courts." *Glens Falls*, 160 F.3d at 856. "Where a case is complex and expensive, and resolution of the case will benefit the public, the public has a strong interest in settlement." *Id*. at 856-57. The public and the parties have an interest in the settlement of this case.

"Generally, confidentiality helps facilitate settlement and, in turn, conserves judicial and private resources . . . . Thus, public policy provides a basis for preserving the confidentiality of settlement agreements when practical." *In re Estate of Cole*, 163 So. 3d 921, 926 (Miss. 2012). "[P]arties engaged in settlement talks are more likely to hold frank and open discussions regarding the strengths and weaknesses of their case in a confidential setting." *Landco*, 259

7

F.R.D. at 514. "Conversely, failure to preserve confidentiality could discourage settlement." *In re Estate of Cole*, 163 So. 3d at 926. "[F]ew cases would ever be settled if the press or public were in attendance at a settlement conference or privy to settlement proposals." *Glens Falls*, 160 F.3d at 858.[5]

At this stage of litigation, while the parties are immersed in settlement negotiations, maintaining the Protective Order [70] is "likely in the long run to best serve the interest of the public and the parties alike: '[W]hatever the value of disclosure, it should not obscure the strong public interest in, and policy objectives furthered by, promoting settlement.'" *Grove Fresh Distrib., Inc. v. John Labbatt Ltd.*, 888 F. Supp. 1427, 1441 (N.D. Ill. 1995) (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 HARV. L. REV. 427, 486-87 (1991)). The Court finds that the parties should be given a reasonable opportunity to settle this case. This complex case has been ongoing for more than five years and the need for a fair and efficient resolution outweighs the public's interest in accessing the TAC Report at this time.[6]

For these reasons, the Court finds that The Clarion Ledger's Motion [71] should be denied to the extent it seeks to have the Court vacate or modify the Protective Order [70]. This ruling, however, is without prejudice to The Clarion Ledger's right to request the Court to vacate

---

[5] "In a perfect world, the public would be kept abreast of all developments in the settlement discussions of lawsuits of public interest. In our world, such disclosure would, as discussed above, result in no settlement discussions and no settlements." *Glens Falls*, 160 F.3d at 856.

[6] Additionally, The Clarion Ledger has not demonstrated that disclosure is necessary for any of the reasons set forth in L.U. Civ. R. 83.7(j)(4) (to prevent a manifest injustice, enforce a settlement, help establish a violation of criminal law, or prevent harm to the public health or safety).

or modify the Protective Order [70] once settlement negotiations are concluded.

IT IS, THEREFORE, ORDERED that:

1. The Motion to Intervene and to Vacate Protective Order [71] is GRANTED in part and DENIED in part.

2. The Clarion Ledger's request to intervene for the limited purpose of challenging the Protective Order is granted.

3. The Clarion Ledger's request to have the Court vacate or modify the Protective Order is denied.

SO ORDERED this the 28th day of August, 2015.

s/ Michael T. Parker
United States Magistrate Judge