IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**MARY TROUPE, ET AL.**                                                               **PLAINTIFFS**

**v.**                                 **CIVIL ACTION NO. 3:10-cv-153-HTW-MTP**

**HALEY BARBOUR, ET AL.**                                              **DEFENDANTS**

## ORDER

THIS MATTER is before the Court on the Renewed Motion to Vacate Protective Order [92] filed by Gannett River States Publishing Corporation d/b/a The Clarion Ledger ("The Clarion Ledger"). Having considered the Motion [92], record, and applicable law, the Court finds that the Motion [92] should be denied.

## BACKGROUND

Plaintiffs filed this class action lawsuit on March 10, 2010, alleging that the State of Mississippi failed to provide intensive home-and-community-based services for children with mental health needs. (Complaint [1].) On April 8, 2011, the Department of Justice ("DOJ") filed a Statement of Interest of the United States pursuant to 28 U.S.C. § 517 in support of Plaintiffs' claims. (Statement of Interest [41].) In a letter dated December 22, 2011, the DOJ informed the State that "if the State declines to enter into voluntary compliance negotiations . . . the United States may then need to take appropriate action, including initiating a lawsuit." (Letter [48-1] at 33.) On August 29, 2014, the DOJ and the State reached an agreement ("Agreement"), which addressed remedial measures the State would implement to assess and address the DOJ's concerns and Plaintiffs' claims. (Agreement [71-2].)

As part of the Agreement, the State retained the Technical Assistance Collaborative

1

("TAC") to provide (1) assessments of permanent supportive housing for the mentally handicapped and (2) assessments of the State's existing mental health services. ([71-2].) The State's existing mental health services are at issue in this action, and therefore, will be referred to herein as the "*Troupe* Issues." The TAC Report on the *Troupe* Issues was completed in March, 2015.[1] On March 23, 2015, The Clarion Ledger requested that the Mississippi Department of Mental Health ("MDMH") produce the TAC Report. (Clarion Ledger Request [71-5].) On March 26, 2015, MDMH denied the request. (MDMH Denial [71-6].)

On April 24, 2015, the State filed an unopposed Motion for Protective Order [68] in this action, requesting that the Court enter an order protecting the confidentiality of the TAC Report. The State desired to provide Plaintiffs the TAC Report to facilitate settlement discussions. However, before the State released the report to Plaintiffs, it moved for an order prohibiting the release of the report to anyone who is not a party, counsel, or expert participating in the confidential settlement negotiations. *See* Motion [68]. The State argued that the TAC Report was created for purposes of negotiation and should be protected as confidential pursuant to Local Uniform Civil Rule 83.7. *Id*. On May 6, 2015, the Court granted the Motion for Protective Order [68]. (Protective Order [70].)

On June 24, 2015, The Clarion Ledger filed a Motion to Intervene and to Vacate Protective Order [71]. On August 28, 2015, the Court granted The Clarion Ledger's Motion [71] to the extent it sought to intervene for the limited purpose of challenging the Protective Order [70], finding that all of the requirements to intervene under Fed. R. Civ. P. 24(a)(2) had been

---

[1] TAC completed its assessment of permanent supportive housing for the mentally handicapped in October, 2015, and made that portion of the report available to the public.

met. (Order [77].)  The Court, however, denied without prejudice The Clarion Ledger's request to have the Court vacate or modify the Protective Order [71].  On August 3, 2016, The Clarion Ledger filed its Renewed Motion to Vacate Protective Order [92].

## ANALYSIS

The Protective Order at issue provides the following:

> Statements made, and documents generated or exchanged by one of the parties to the negotiations or the Technical Assistance Collaborative ("TAC") in the course of the settlement negotiations, including, but not limited to, the March 2015 TAC Mississippi Children's Behavioral Health Needs Assessment, shall not be disclosed by any of the parties to the negotiations to anyone who is not a party, counsel, or an expert participating in the confidential settlement negotiations, unless the parties to the negotiations expressly agree otherwise in writing . . . .

([70].)

Local Uniform Civil Rule 83.7(j) dictates that communications, information, and data related to a mediation or settlement conference are confidential and not subject to disclosure.  In its prior Order [77], the Court determined that the TAC Report was created, in part, for purposes of negotiations between the State and *Troupe* Plaintiffs.  The Court made this determination based primarily on the Agreement [71-2] reached between the State and DOJ.

As previously mentioned, the Agreement addressed remedial measures the State would implement to assess and address the DOJ's concerns and the *Troupe* Plaintiffs' claims.  The Agreement states, "[t]he State and the United States will include counsel for the *Troupe* plaintiffs in negotiations and attempt to resolve the *Troupe* claims within the agreement." ([71-2] at 4.)  The Agreement further states, "[t]he [TAC] consultant will assist the parties during settlement discussions by assessing the State's existing service array, quality, and availability, and make recommendations for necessary improvements in order to address the issue in the

*Troupe* litigation." ([71-2] at 5.) In the Agreement, the State provided a framework for moving forward in negotiations with the DOJ and *Troupe* Plaintiffs by setting specific goals and creating a process for resolving issues. The Court concluded that the TAC Report is eligible for protection as a confidential document.

Although the TAC Report is eligible for protection, "[i]t is well established that a district court retains the power to modify or lift confidentiality orders that it has entered." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 784 (3rd Cir. 1994).[2] "The party seeking to modify the order of confidentiality must come forward with a reason to modify the order. Once that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order." *Id*. at 790. The Court must weigh the need for confidentiality of settlement related documents against the public's right of access.

The Court previously held that the public has an interest in the TAC Report considering the fact that this action involves public entities such as the Mississippi Department of Mental Health and the fact that the TAC Report involves matters of legitimate public concern. (Order [77] at 6) (citing *Pansy*, 23 F.3d at 788) ("If a settlement agreement involves issues or parties of a public nature, and involves matters of legitimate public concern, that should be a factor weighing against entering or maintaining an order of confidentiality."). The Court, however, held that the public's interest in the TAC Report was diminished by the fact that the report was created and exchanged for purposes of settlement negotiations. ([77] at 7) (citing *United States v.*

---

[2] Additionally, pursuant to the Local Rules, the disclosure of confidential information is allowed under certain circumstances, including to prevent manifest injustice or when required by law. *See* L.U. Civ. R. 83.7(j)(2) & (4)(A).

*Glens Falls Newspapers, Inc.*, 160 F.3d 853, 857 (2d Cir. 1998); *Landco Equity Partners, LLC v. City of Colorado Springs*, 259 F.R.D. 510, 513-14 (D. Colo. 2009) (finding that the "public's interest in monitoring the government through use of settlement negotiation information is negligible, and a presumption of public access to settlement negotiation information in this case is practically nonexistent.")

Next, the Court determined that the interest in the confidentiality of settlement related documents should be balanced against the public's interest in access to the TAC Report. ([77] at 7.)  The Court focused on the public's interest in the settlement of this action. ([77] at 7-8); *Glens Falls*, 160 F.3d at 856 ("Where a case is complex and expensive, and resolution of the case will benefit the public, the public has a strong interest in settlement.").  After balancing these interests, the Court held as follows:

> At this stage of litigation, while the parties are immersed in settlement negotiations, maintaining the Protective Order [70] is "likely in the long run to best serve the interest of the public and the parties alike: '[W]hatever the value of disclosure, it should not obscure the strong public interest in, and policy objectives furthered by, promoting settlement.'" *Grove Fresh Distrib., Inc. v. John Labbatt Ltd.*, 888 F. Supp. 1427, 1441 (N.D. Ill. 1995) (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 HARV. L. REV. 427, 486-87 (1991)). The Court finds that the parties should be given a reasonable opportunity to settle this case.  This complex case has been ongoing for more than five years and the need for a fair and efficient resolution outweighs the public's interest in accessing the TAC Report at this time.

([77] at 8.)  Thus, the Court denied The Clarion Ledger's Motion [71] to the extent it sought to have the Court vacate or modify the Protective Order [70], but the Court's denial was "without prejudice to The Clarion Ledger's right to request the Court to vacate or modify the Protective Order [70] once settlement negotiations are concluded." ([77] at 8-9.)

In its renewed Motion [92] and Brief [93] in support, The Clarion Ledger argues that the

"sole basis for both the State's lone opposition to the Clarion Ledger's original motion to vacate and the Court's denial of that motion was the parties' ongoing settlement negotiations." It further argues that because the settlement negotiations have concluded, the public's interest in accessing the TAC Report "now outweighs the parties' interest in resolving this matter." The Clarion Ledger describes the then-ongoing settlement negotiations as the only factor weighing in favor of maintaining the protective order. A more accurate description of the Court's prior ruling, however, would be that settlement negotiations were a factor which, alone, was sufficient to outweigh the public's interest in access to the TAC Report.

As previously mentioned, the public's interest in the TAC Report was diminished by the fact that the report was created and exchanged for purposes of settlement negotiations. Other interests are balanced against that diminished interest, including the public's interest in a resolution of this action. Although the parties apparently are not actively negotiating, The Clarion Ledger has not established that the public and the parties no longer have an interest in the settlement of this action. The State "being judged by the 'court of public opinion' would hardly encourage [further] negotiations." *Landco*, 259 F.R.D. at 514. This complex case has been ongoing for more than six years, and the Court recognizes that fostering settlement is an important function of the Court. *Glens Falls*, 160 F.3d at 856. With the litigation ongoing and the opportunity for a fair and efficient resolution between the parties still available, The Clarion Ledger has failed to establish that at this point the public's diminished interest in the report outweighs the interest in the confidentiality of settlement related documents.

Finally, the State's reliance on the Protective Order and the confidential nature of settlement related documents also weighs against the public's diminished interest in the report.

*See Pansy*, 23 F.3d at 789-90.  The State moved for a protective order specifically addressing the TAC Report prior to releasing the report to Plaintiff. (Motion [68].)  The State points out that it "never would have agreed to engage TAC to create the TAC Report, or to act as an intermediary to facilitate settlement negotiations regarding its findings, if the expert report would not be treated as confidential." ([98] at 12.)

IT IS, THEREFORE, ORDERED that, upon weighing the above factors, the Renewed Motion to Vacate Protective Order [92] is DENIED.

SO ORDERED this the 19th day of October, 2016.

s/ Michael T. Parker
United States Magistrate Judge