IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| J.B., L.P., L.M., L.S., by and through their next friends, | |
| Plaintiffs, | Case No. 3:10-cv-153-HTW-MTP |
| v. | *Consolidated with* |
| GOVERNOR PHIL BRYANT, et al. | Case No. 3:16-cv-622-CWR-FKB |
| Defendants. | |

## AMENDED MOTION FOR RECONSIDERATION

Plaintiff L.S., by and through his counsel, moves this Court to reconsider its December 6, 2016 Order consolidating *J.B., et al. v. Bryant*, *et al.*, No. 3:10-CV-153-HTW-MTP (S.D. Miss. Mar. 10, 2010) ("*Troupe*" or "L.S.'s case"), with *United States v. Mississippi*, No. 3:16-CV-622-CWR-FKB (S.D. Miss. Aug. 11, 2016) (the "DOJ case") (EFC No. 127).

As a result of the extraordinary delay in the adjudication of *Troupe*, this case is no longer a putative class action on behalf of children under the age of twenty-one with behavioral or emotional disorders. Instead, *Troupe* has become an individual action on behalf of L.S., an adolescent with an intellectual disability. L.S.'s case should not be weighed down with the DOJ case, as it will only delay justice and the appropriate level of care he needs.

L.S.'s case is irreconcilable with the DOJ case in nearly every way. L.S. seeks services for himself in the most integrated setting appropriate for his needs as an adolescent with an intellectual disability. In contrast, the DOJ seeks systemic, statewide injunctive relief for thousands of adults with mental illness. The scope, scale, potential for settlement, and timelines of the two cases are completely different. As a result, consolidation will result in manifest

injustice and further delay to L.S., who has already waited more than six years for relief, without providing any benefit to the Court's ability to resolve either case.

## PROCEDURAL BACKGROUND

In 2010, four Medicaid-eligible children under the age of twenty-one – J.B., L.P., L.M., and L.S. – filed a class action on behalf of themselves and similarly-situated children with significant behavioral and emotional disabilities who have experienced prolonged and unnecessary confinement in hospitals, mental health institutions, and correctional facilities. (ECF No. 1). They sought to compel Mississippi to provide intensive home-based and community-based mental health services which they needed and to which they were entitled. These plaintiffs moved for class certification on March 10, 2010 (ECF No. 2), but that motion was never decided by the Court.

On May 10, 2010, Defendants filed a motion to dismiss. (ECF No. 15). This Court issued its Report and Recommendations on August 23, 2013, in which it recommended dismissal of Plaintiffs' claim under the Early and Periodic Screening, Diagnostic and Treatment ("EPSDT") provisions of the Medicaid Act. (ECF No. 55). Pursuant to Rule 16(b)(3) of the Uniform Local Rules of the United States District Courts of the Northern and Southern Districts of Mississippi, this case did not proceed to discovery while Defendants' Motion to Dismiss was pending. (ECF No. 19). The District Court issued its Order adopting the Report and Recommendations on November 7, 2016, more than six years after this case was filed. (ECF No. 120). This Order was the first dispositive ruling in this case.

Due to the six-year delay in the adjudication of this case, three of the four putative class representatives – J.B., L.P., and L.M. – have turned twenty-one years old. Because they have "aged out" of the children's mental health system, their individual claims are no longer ripe for

adjudication. As a result, L.S., who is nineteen years old, is the only remaining plaintiff in this lawsuit.

L.S. is a person with a moderate intellectual disability and a co-occurring mental illness. His primary needs for support are related to his intellectual disability, not his mental illness. The remedy he seeks is the provision of home and community-based services from Defendants' existing statewide system of home and community-based services for people with intellectual disabilities.

## FACTUAL BACKGROUND

A.     **Mental illness intellectual disabilities are different.**

"Mental illness" and "intellectual disability" are terms of art, each with a distinct definition and specialized meaning. Mississippi law defines a "person with mental illness" as one who has a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs his or her judgment, behavior, capacity to recognize reality, or ability to reason or understand.  Miss. Code § 41-21-61(e).  In contrast, a "person with an intellectual disability" is defined as an individual who has been diagnosed with substantial limitations in present functioning, manifested before age eighteen, characterized by significantly sub-average intellectual functioning, and related limitations in two or more adaptive skill areas.  Miss. Code § 41-21-61(f).[1]

---

[1] "Intellectual disability" has become the diagnostic term to refer to what psychologists previously referred to as "mental retardation." *See Hall v. Florida*, 134 S. Ct. 1986, 1990 (2014). The American Association of Intellectual and Developmental Disabilities has a "Frequently Asked Questions" page that explains the change in terminology and the difference between an intellectual disability and the broader term of developmental disability. *See* https://aaidd.org/intellectual-disability/definition/faqs-on-intellectual-disability#.WIDtxFUrLIU.  This change in terminology is also used in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM"), one of the basic texts used by psychiatrists and other experts. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 33 (5th ed. 2013).

**B.      Mississippi has distinct service systems for individuals with mental illness and for individuals with intellectual disabilities.**

The mission statement of the Mississippi Department of Mental Health (DMH) is: "Supporting a better tomorrow by making a difference in the lives of Mississippians with mental illness, substance abuse problems and intellectual/developmental disabilities one person at a time."[2] As this language suggests, DMH operates separate bureaus for the planning, development, and supervision of services for people with mental illness and for people with intellectual/developmental disabilities.[3]

The Bureau of Mental Health provides services for individuals with mental illness.[4] These services include a mental health community living program, a psychiatric residential treatment facility, and four psychiatric hospitals.[5]  The DOJ case alleges that thousands of Mississippi adults with mental illness needlessly cycle through these four psychiatric hospitals.

In contrast, the Bureau of Intellectual and Developmental Disabilities is responsible for providing services for individuals with intellectual disabilities, such as L.S.[6]  These services include five state-operated, comprehensive intellectual and developmental disability programs; a state operated program for youth who require specialized treatment; 14 regional community treatment centers; and other non-profit community agencies/organizations that provide community services.[7] L.S. seeks medically-necessary services from within this public service delivery system.

---

[2] *See* http://www.dmh.ms.gov/wp-content/uploads/2015/06/2016-2017-MS-Dep-of-Mental-Health-State-Plan-for-review.pdf.
[3] *See* http://www.dmh.ms.gov/who-we-are/central-office/.
[4] *See* Mississippi Department of Mental Health Community Mental Health Services FY 2016-2017 State Plan, 7, *available at* http://www.dmh.ms.gov/wp-content/uploads/2015/06/2016-2017-MS-Dep-of-Mental-Health-State-Plan-for-review.pdf.
[5] *Id.*
[6] *Id.* at 8.
[7] *See* Mississippi Department of Mental Health, "IDD Services: What Help is Available?" *available at* http://www.dmh.ms.gov/service-options/idd-services/ (last accessed 01/09/17).

4

**C.     L.S. seeks medically-necessary services, programs, and activities in the most integrated setting appropriate to his needs.**

L.S.'s primary needs for support are related to his intellectual disability, not his mental illness. He seeks medically necessary home- and community-based services to treat or ameliorate his intellectual disability. L.S. is entitled to receive these services in the most integrated setting appropriate to his needs.

## LAW AND ANALYSIS

**A.     Reconsideration is necessary to prevent manifest injustice to L.S.**

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981). Granting a motion to alter or amend is appropriate in cases with: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice. *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002) (citing FED. R. CIV. P. 59).

In this case, reconsideration is necessary to prevent manifest injustice to L.S., who is the only remaining plaintiff in *Troupe*. He has already waited six years for the medically-necessary services, programs, and activities in the most integrated setting appropriate to his needs. Every delay in this case, including the substantial delay that would result from consolidation, constitutes a manifest injustice to L.S.

**B.     L.S.'s case and the DOJ case should not be consolidated.**

Federal Rule of Civil Procedure 42 provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid

unnecessary cost or delay." FED. R. CIV. P. 42(a). District courts consider a variety of factors when addressing a motion to consolidate, including:

> (1) whether the actions are pending before the same court, (2) whether common parties are involved in the cases, (3) whether there are common questions of law and/or fact, (4) whether there is a risk of prejudice or confusion if the cases are consolidated, and if so, is the risk outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, (5) whether consolidation will conserve judicial resources, (6) whether consolidation will result in an unfair advantage, (7) whether consolidation will reduce the time for resolving the cases, and (8) whether consolidation will reduce the cost of trying the cases separately.

*Crest Audio, Inc. v. QSC Audio Products, Inc.*, 3:13-CV-610-CWR-FKB, (S.D. Miss. Mar. 4, 2016). "A trial court has broad discretion in determining whether to consolidate a case pending before it." *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 762 (5th Cir. 1989).

    **1.**    **L.S.'s case and the DOJ case do not share common questions of law or fact.**

In its Order consolidating the cases, this Court found that *Troupe* and the DOJ case share common questions of law and fact because "[b]oth cases present broad challenges to Mississippi's public policies concerning the provision of services and treatment under Medicaid to those with mental illness. Insofar as one case concerns children and the other concerns adults, these are simply facets of the same system." (ECF No. 127 at 5). While this was true in 2010, *Troupe* is no longer a "broad challenge" of Mississippi's public policies. Instead, L.S.'s case seeks only to enforce the right of one young man to receive services, programs, and activities in the most integrated setting appropriate to his needs as an adolescent with an intellectual disability.

As Table 1, below, demonstrates, L.S.'s case is fundamentally different from the DOJ's systemic challenge to Mississippi's public policies concerning the provision of services to adults with mental illness.

| TABLE 1: FUNDAMENTAL DIFFERENCES BETWEEN L.S.'S CASE AND THE DOJ'S CASE | | |
|---|---|---|
| | **L.S.'S CASE** | **DOJ'S CASE** |
| **Plaintiff(s)** | One adolescent, L.S. | Thousands of adults with mental illness, represented by the DOJ |
| **Primary diagnosis** | Intellectual disability | Mental illness |
| **State service system** | The Bureau of Intellectual and Developmental Disabilities and Mississippi Medicaid Agency | The Bureau of Mental Health |
| **Type of claim** | Individual | Systemic/statewide |
| **Claims** | Violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Medicaid Act | Violation of the Americans with Disabilities Act |
| **Relief sought** | Individual services for L.S. in the most integrated setting appropriate to his needs as an adolescent with an intellectual disability. | Broad injunctive relief regarding Mississippi's public policies concerning the provision of services and treatment under Medicaid to adults with mental illness. |
| **Anticipated scope of discovery** | Records related to L.S.'s individual intellectual disability and needs | Records related of thousands of individuals with mental illness in Mississippi and the provision of mental health services across the state |
| **Anticipated trial date** | Within one year | January 2019 |
| **Case filing date** | March 10, 2010 (more than six years ago) | August 11, 2016 |

**2.     Consolidation would cause substantial prejudice to L.S. and confusion of the issues.**

L.S. was thirteen years old when *Troupe* was filed in 2010. He has waited six years for relief. During those years, L.S. has been unnecessarily segregated and institutionalized in psychiatric residential treatment facilities, intermediate care facilities for people with

7

developmental disabilities, state hospitals, and group homes across Mississippi. These facilities deny L.S. the benefits of a life in the community. As a result, he has been unable to pursue everyday life activities that contribute to his growth and development as a person.

Consolidation would additionally cause confusion of the issues. As stated above, the DOJ case involves adults with mental illness. Resolution of the DOJ's claims would not resolve L.S.'s claims, because he seeks individual relief within Mississippi's service system for adolescents with intellectual disabilities. The risk of confusion of the issues is not outweighed by the risk of inconsistent adjudications if the cases are tried separately, since the two cases do not share common questions of law or fact.

### 3. Consolidation will cause extraordinary cost and delay in the resolution of L.S.'s claims.

L.S. only seeks to enforce his individual right to receive services, programs, and activities in the most integrated setting appropriate to his needs. He does not seek broad injunctive relief or systemic change to Mississippi's public policies concerning the provision of services and treatment under Medicaid to those with mental illness.

Due to the fundamental differences between the cases, consolidation would unnecessarily and unfairly prolong L.S.'s case. The DOJ case involves procedural complexities inherent to class actions that are absent from the individual claim at issue in *Troupe*. As a result, consolidation will greatly increase costs to L.S. Similarly, the discovery and motions practice necessary to resolve L.S.'s individual claims are considerably less complicated than those of the DOJ's statewide case. Because L.S.'s interests and needs are fundamentally different from the interests and needs of adults with mental illness, it is unlikely that the parties can reduce costs by conducting joint discovery and briefing joint dispositive motions.

## CONCLUSION

To prevent manifest injustice, Plaintiff L.S. respectfully requests that the Court grant the pending motion to reconsider its December 6, 2016 Order consolidating *Troupe* and the DOJ case.

**RESPECTFULLY SUBMITTED**, this the 19th day of January, 2017.

/s/*Lydia Wright*
Lydia Wright, MSB# 105186
Jody E. Owens, MSB# 102333
Southern Poverty Law Center
111 E. Capitol Street, Suite 280
Jackson, MS 39201
(601) 948-8882 (p)
(601) 948-8885 (f)
lydia.wright@splcenter.org
jody.owens@splcenter.org

Vanessa Carroll, MSB# 102736
Southern Poverty Law Center
1055 St. Charles Ave., Suite 505
New Orleans, LA 70130
(504) 486-8982 (p)
(504) 486-8947 (f)
vanessa.carroll@splcenter.org

Ira Burnim, D.C. Bar No. 406145*
The Bazelon Center for Mental Health Law
1101 5th Street NW, Suite 1212
Washington, D.C. 20005
202-467-5730 (phone)
202-223-0409 (fax)
**pro hac vice*

Ona T. Wang, N.Y. Bar No. 2987949*
Deborah H. Renner, N.Y. Bar No. 2561728*
Michelle Tanney, N.Y. Bar No. 5101910*
Baker & Hostetler LLP
45 Rockerfeller Plaza, 14th Floor
New York, NY 10111
(212) 589-4200 (p)

               (212) 589-4201 (f)
               owang@bakerlaw.com
               drenner@bakerlaw.com
               mtanney@bakerlaw.com
               **pro hac vice*

               **Counsel for Plaintiffs**

**CERTIFICATE OF SERVICE**

I certify that I have this day electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record.

This the 19th day of January, 2017.

/s/ Lydia Wright