IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | 3:10-CV-153-HTW-MTP |
| | : | 3:16-CV-622-CWR-FKB |
| STATE OF MISSISSIPPI, | : | |
| | : | |
| Defendant. | : | |

CONSOLIDATED WITH

| | |
|---|---|
| J.B., L.P., L.M., L.S., by and through their next friends, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| GOVERNOR PHIL BRYANT, et al., | : |
| | : |
| Defendants. | : |

**SUPPLEMENTAL RESPONSE IN SUPPORT OF *TROUPE* PLAINTIFF'S MOTION FOR RECONSIDERATION**

The United States respectfully requests that this Court vacate its December 7, 2016, Order consolidating *Troupe* with the United States' lawsuit in light of the material changes in the nature of *Troupe* plaintiff's case that were not known to the Court when the motion was granted. Order on Consolidation, ECF No. 127. The Court's conclusion that *Troupe v. Barbour* and the United States' lawsuit involve "the same substantive questions of law" and substantial "factual overlap," *id.* at 7, is no longer supported, because *Troupe* is no longer a putative class action on behalf of children with mental illness. Instead, *Troupe* concerns one individual who is seeking services primarily through Mississippi's service system for people with intellectual and

developmental disabilities.  *See* Am. Mot. for Recons. 4, ECF No. 137.  Because of the asymmetry between the two cases, the Court's consolidation Order should be vacated.

## PROCEDURAL BACKGROUND

When the State moved to consolidate on October 24, 2016, *Troupe* was a putative class action on behalf of four Medicaid-eligible children—J.B., L.P., L.M. and L.S.—and hundreds of other similarly situated children with significant behavioral and emotional disabilities who have experienced unnecessary segregation in facilities throughout the State.  *See generally* Compl. ¶ 4, ECF No. 1; Mot. to Consolidate, ECF No. 112.  The United States filed its opposition to the State's consolidation motion on November 7, 2016.  *See* Resp. to Mot. to Consolidate, ECF No. 118.  A few hours later, the District Court in *Troupe* ruled on the State's pending motion to dismiss, dismissing *Troupe* plaintiffs' claim regarding Early and Periodic Screening, Diagnostic, and Treatment (EPSDT) services.  Order Granting Mot. to Dismiss, ECF No. 120.  Ten days after the District Court's ruling, *Troupe* counsel notified the State that they would no longer seek class certification and instead would pursue the individual claims of L.S., the only named plaintiff who had not yet turned twenty-one and "aged out" of the children's mental health system.  Mot. to Amend Compl. 2, ECF No. 135.

Meanwhile, unaware of the changed circumstances in *Troupe*, the Court consolidated *Troupe* with the United States' case on December 7.  Order on Consolidation, ECF No. 127.  The next day *Troupe* counsel withdrew the motion for class certification.  Notice of Withdrawal, ECF No. 129.  On January 13, 2017, Plaintiffs J.B., L.P., and L.M. moved to voluntarily dismiss their claims and Plaintiff L.S. filed a motion for leave to file an amended complaint.[1]  Mot. for

---

[1] The proposed amended complaint re-alleges an EPSDT claim.  *See* Proposed Am. Compl. ¶¶ 5,8,26-34, 55-57, ECF No. 135-1.  The State opposes inclusion of this claim.  *See* Opp. to Mot. to Am. Compl., ECF No. 142.  If the plaintiff is permitted to proceed with his EPSDT claim it is a further argument against

Voluntary Dismissal, ECF No. 134; Mot. to Am. Compl., ECF No. 135.  Those motions are currently pending.

## DISCUSSION

The Court should reverse its prior consolidation order given the significant change in circumstances in *Troupe*.  This Court "is free to reconsider and reverse interlocutory orders for any reason it deems sufficient."  *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727-28 (5th Cir. 2012) (citation omitted).

All of the substantive factors that the Court considered when ruling on consolidation prior to the *Troupe* plaintiff's recent filings now weigh heavily against consolidation.  The Court's first Order on consolidation rested on an analysis of eight factors: (1) whether the actions are pending in the same court; (2) whether the cases involve the same parties; (3) whether there are common questions of law and fact; (4) whether consolidation will result in a risk of prejudice; (5) whether there is an opportunity to conserve judicial resources; (6) whether consolidation will create an unfair advantage; (7) whether consolidation will lead to quicker resolution; and (8) whether consolidation will reduce costs.  *See* Order on Consolidation 2-3, ECF No. 127 (*citing Crest Audio, Inc. v. QSC Audio Prod., Inc.*, No. 3:12-CV-755-CWR-FKB, 2016 WL 3249217, at *2 (S.D. Miss. Mar. 4, 2016)).  The fact that the two cases are pending in the same court is the only factor that still weighs in favor of consolidation.  Considering the remaining factors in light of the Plaintiff's Proposed First Amended Complaint, consolidation is not appropriate and will result in undue prejudice to both L.S. and the United States.

---

consolidation, but is not dispositive.  The factors analyzed in this brief weigh heavily against consolidation without regard to the EPSDT claim.

*1. The Facts, the Legal Issues, and the Parties Are Distinct*

In ruling on the State's motion for consolidation prior to the change in circumstances, this Court found persuasive the potential efficiencies presented by the overlapping parties, facts, and legal issues in the two matters. Order on Consolidation, ECF No. 127. Since the order on consolidation was issued, the overlapping nature of the cases has been reduced to nearly zero, and consequently, consolidating the cases does not benefit the parties or the Court.

That the two matters arise under the same statute is undisputed, but it is now clear that the scope and factual content of the two cases significantly diverge, leaving few common questions of law or fact to be determined. *Troupe* no longer presents a "broad challenge[] to Mississippi's public policies concerning the provision of services and treatment under Medicaid to those with mental illness," nor does it "involve demands for broad injunctive relief." Order on Consolidation 5, ECF No. 127. Rather, the *Troupe* plaintiff seeks only to enforce *his* right to receive services in his home free from unnecessary segregation in the State's facilities. Am. Mot. for Recons. 6, ECF No. 137.

Consolidation of cases with such different scopes is not appropriate. *See, e.g.*, *Adkisson v. Jacobs Engineering Grp., Inc.*, No. 3:13-cv-505, 2016 WL 1465363, at *2 (E.D. Tenn. Apr. 14, 2016) (denying consolidation where the scope of cases were dissimilar and "consolidation could unduly delay" plaintiff in the narrower case); *Beverlly Jewellry Co., Ltd. v. Tacori Enterprises*, No. 06-cv-1967, 2006 WL 3304218, at *2 (N.D. Ohio Nov. 13, 2006) (consolidation was inappropriate where it would cause narrower litigation "to be subsumed by a much broader ambit of discovery and issues without any substantial benefit to the efficient progression of [the] cases").

L.S.'s case is focused on his needs and the failures of the State to provide him appropriate services to meet his needs, which are primarily available through the system for serving people

4

with intellectual and developmental disabilities. *See, e.g.*, Proposed Am. Compl. ¶¶ 41-42, 53-54, ECF No. 135-1. To that end, his case will include review of the services that he has received, the facilities where he has been admitted, the services available to him in his home region, and the opinions of expert(s) about what services he should receive in order to live at home successfully. The factual determinations will ultimately concern whether L.S. is appropriate for placement in the community; whether L.S. objects to receiving services in the community; and whether providing the developmental disabilities services that L.S. needs in the community can be reasonably accommodated.

By contrast, the United States' case is a statewide matter that seeks injunctive relief for thousands of people with mental illness. *See* Compl. at 28-29, *United States v. Mississippi*, No. 16-cv-622, ECF No. 1. The factual determinations in the United States' case will ultimately concern whether adults in or at serious risk of entering the State Hospitals are appropriate for community placement; whether those adults object to placement in the community; and whether the State can meet the needs of thousands of individuals who are in or at risk of entering the State Hospitals by making reasonable accommodations to its current community-based mental health services.

Consistent with the scope of each case, discovery in *Troupe* will be narrower and shorter than discovery in the United State's case. The number of fact witnesses, experts, and documents needed for L.S. to explore the issues in his case will be relatively small. *See* Am. Mot. for Recons. 7, ECF No. 137. Additionally, L.S. estimates that he will be ready for trial in less than a year. Mot. for Recons. 5, ECF No. 130.

Discovery in the United States' case will be considerable given the approximately 3,300 people who are admitted to the State psychiatric hospitals each year, the significant civil rights and public interests at stake, and the number of State employees with relevant information

concerning whether the needs of adults with mental illness can be accommodated in the community.  Mississippi's mental health system includes fourteen community mental health centers across the state; four State-run hospitals that have a total bed capacity of approximately 500; the Central Mississippi Residential Center; nine crisis stabilization units; and additional in-patient psychiatric units.  *See generally* Mississippi Department of Mental Health, FY 2016 Annual Report, http://www.dmh.ms.gov/wp-content/uploads/2016/11/DMH-FY16-Annual-Report.pdf (last visited Feb. 2, 2017).  The work of multiple state entities, including the Department of Mental Health, Division of Medicaid, and Mississippi Home Corporation, is directly implicated by this litigation.  The document production and number of depositions in the United States' case will be significantly larger than and mostly distinct from *Troupe's* individual case.  Consistent with similar-sized civil rights cases, the United States' case-in-chief will likely involve dozens of witnesses, multiple experts, and at least three weeks for trial.  *See, e.g., Disability Advocates, Inc. v. Paterson*, 653 F. Supp. 2d 184, 188 (E.D.N.Y. 2009) (an *Olmstead* case on behalf of 4,300 people with mental illness that resulted in a factual record of over 13,000 pages and an eighteen-day bench trial involving 29 testifying witnesses, 300 exhibits that were admitted into evidence, and a 3,500 page trial transcript).  Given the scope and complexity of the matter, the United States has proposed a discovery schedule with trial beginning about two years after the initiation of discovery.

Further, while *Troupe* originally addressed "mental health services for children," Order on Consolidation 4, ECF No. 127, that is no longer true.  The only remaining *Troupe* plaintiff is a person with a moderate intellectual disability and his "primary needs for support are related to his intellectual disability, not his mental illness."  Am. Mot. for Recons. 3, ECF No. 137.  For that reason, he seeks services through the State's *intellectual and developmental disability system*, not the State's mental health system.  In contrast, the United States is seeking reasonable

6

modifications to the State's community-based *mental health system*.  The staff that oversee these two service systems at the relevant State agencies and the community-based provider agencies are distinct, as are the specific services available to the two populations.  Am. Mot. for Recons. 4, ECF No. 137.  Thus it is no longer true that both cases relate to the "provision of services and treatment under Medicaid to those with mental illness."  Order on Consolidation 5, ECF No. 127.

The Court previously noted that the United States has an interest in the outcome of *Troupe* v. *Barbour*.  Order on Consolidation 3-4, ECF No. 127.  While the United States has an ongoing interest in ensuring compliance with and uniform interpretation of the Americans with Disabilities Act (ADA) remedying L.S.'s *individual* claim by providing him needed community-based services through the intellectual and developmental disabilities service system has no possibility of resolving the United States' 2011 systemic findings regarding children's mental health.  *See generally* Pls.' Notice of Findings, ECF No. 48.  Thus, the United States' "interest in the outcome" of *Troupe*, Order on Consolidation 4, ECF No. 127, has significantly diminished and is the same interest the United States would have in any individual case filed under the ADA.  Given the significant change in circumstances, the State is the only remaining common party.

Finally, to the extent that the *Troupe* plaintiff proceeds with his claim under the EPSDT provisions of the Medicaid Act, that presents a "distinctive claim," *id.* at 4, not common to the two cases.  *See* Proposed Am. Compl. ¶¶ 5, 8, 26-34, 55-57, ECF No. 135-1.  This factor weighs against consolidation.

    2. *Consolidation Risks Prejudicing Both the United States and L.S. and Deconsolidation Is Unlikely to Result in Inconsistent Rulings*

Both the United States and the *Troupe* plaintiff will be prejudiced if forced to litigate their disparate cases together.  L.S. intends to be ready for trial in one year.  Mot. for Recons. 5,

7

ECF No. 130. The United States has proposed a schedule with trial beginning approximately two years from the start of discovery. Two years is a significant discovery period for a single plaintiff, but is warranted in the United States' case given the scope of the issues that must be explored through discovery. Thus, consolidation will either force L.S. to wait for his day in court for at least one year longer than is necessary to prepare his claim or force the United States to proceed with insufficient time to discover the critical facts in support of its claims. Consolidation under such conditions is not called for. *See, e.g.*, *Adkisson*, 2016 WL 1465363, at *2.

Further, the risk of inconsistent rulings here is low. The factual determinations that will be made in the two cases, such as whether L.S. is appropriate for placement in the community and whether adults in the State Hospitals oppose community services, have no bearing on one another. Remedial orders in the cases also will not establish inconsistent precedent. L.S. no longer seeks broad injunctive relief, but rather only seeks community-based services primarily through the developmental disability service system to meet his own needs. Am. Mot. to Recons. 7, ECF No. 137. Even if he succeeds in obtaining that relief, his case will not result in a ruling about whether the State can accommodate the needs of adults with mental illness for community-based mental health services. Because of the risk of prejudice to both plaintiffs and the limited potential for inconsistent rulings, this factor weighs against consolidation.

    3. *Consolidation Will Not Reduce Costs Or Conserve Judicial Resources*

Shackling the United States' prosecution of its statewide case to an unrelated individual claim for relief will increase the costs and litigation burdens on all sides.[2] Discovery in *Troupe*

---

[2] Vacating the consolidation order now will avoid the potential prejudice and the procedural complications that will arise if the Court renders judgment in one action but not the other. *See, e.g.*, *Rd. Sprinkler Fitters Local Union v. Cont'l Sprinkler Co.*, 967 F.2d 145, 150 (5th Cir. 1992) (applying a case-

8

will focus on the individual plaintiff and his disability, medical and treatment history, and needs. Am. Mot. for Recons. 7, ECF No. 137.  By contrast, discovery in the United States' case will be statewide in nature, focusing on *all* State Hospitals, community mental health providers, and State entities involved in the mental health system.  *See generally* Compl. at 9-21, *United States v. Mississippi*, No. 16-cv-622,  ECF No. 1.  The document requests and depositions necessary to gain the information relevant to each case will overlap minimally, if at all, saving the State little money and placing a burden on all parties.  If these cases remain consolidated, counsel for all parties must accommodate the scheduling of depositions, expert tours, hearings, and meet and confer meetings that may have little impact on their client's claim.  Document production and review is likely to impose additional burdens on L.S. and the United States as each will be forced to review documents not relevant to its own claim.  Briefing and trial will also be elongated and made more confusing as the parties present evidence about and seek to distinguish between the services for people with intellectual and developmental disabilities and those for people with mental illness.

As described above, the differing factual issues, legal issues, and remedies sought make it impractical to achieve efficiencies by consolidating the cases.  The different timelines appropriate for each case preclude efficiency gains.  And even if the cases were scheduled in tandem, the dispositive questions are not likely to be susceptible to joint briefing given the distinctions between the matters noted above.  For example, there will be separate motions for summary judgement, pre-trial filings, and pre-trial motions based on the distinct factual records associated with each matter.  Because of the different factual determinations to be made, the Court will need to consider the motions individually and will be unable to conserve significant

---

by-case analysis to determine whether one of the consolidated matters could be immediately appealable absent Rule 54(b) certification).

judicial resources. Given the limited scope of *Troupe*, settlement negotiations in that matter are no longer likely to involve the United States, nor would negotiations in the United States' case involve L.S. Because the cases do not lend themselves to efficiencies resulting from combined litigation, this factor weighs against consolidation.

## CONCLUSION

The United States asks that it be relieved of the obligation in Uniform Local Rule 7(b)(4) to file a memorandum in support of this Response because the arguments are succinct.

For the foregoing reasons, the United States respectfully requests that the Court grant the Motion for Reconsideration, ECF Nos. 130, 137, and vacate the Order consolidating these cases. Should the Court deny the Motion for Reconsideration, the United States requests that the Court consolidate the cases solely for pre-trial purposes to avoid unnecessary prejudice and confusion at trial.

Respectfully submitted,

**FOR THE UNITED STATES PLAINTIFF:**

GREGORY K. DAVIS
United States Attorney
Southern District of Mississippi

T.E. WHEELER, II
Acting Assistant Attorney General
Civil Rights Division

MITZI DEASE PAIGE
Chief, Civil Division
Assistant United States Attorney

REBECCA BOND
Acting Deputy Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section

REGAN RUSH
Deputy Chief

Special Litigation Section

Date: February 2, 2017

*/S/ Deena Fox*
DEENA FOX [DC Bar # 992650]
C. ADRIENNE MALLINSON
MATHEW SCHUTZER
PATRICK HOLKINS
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. - PHB
Washington, DC 20530
Telephone: (202) 305-1361
Deena.Fox@usdoj.gov

## **CERTIFICATE OF SERVICE**

I, Deena Fox, Attorney for the United States, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all parties.

**THIS** 2nd day of February, 2017.

/s/*Deena Fox*

Deena Fox